## RICHARD L. WESTERMAN AND PHYLLIS M. WESTERMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2419–69SC. Filed December 14, 1970.

*Robert D. Schuttler*, for the petitioners.
*James J. McGrath*, for the respondent.

### OPINION

IRWIN, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax for the following years:

| Year | Deficiency |
| --- | --- |
| 1965 | $420 |
| 1966 | 385 |

The sole issue presented is whether expenses associated with petitioner Richard L. Westerman's use of a privately owned airplane are deductible as business expenses under section 162 of the Code.[1]

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

All the facts have been stipulated by the parties, and the case was submitted under Rule 30. The stipulation of facts as well as the exhibits attached thereto are incorporated herein by this reference.

Petitioners Richard L. Westerman and Phyllis M. Westerman are husband and wife, and resided at Evansville, Ind., at the time their petition herein was filed. Petitioners timely filed joint income tax returns for the years 1965 and 1966 with the district director of internal revenue, Indianapolis, Ind. Because Phyllis M. Westerman is a party to this case only by virtue of having joined with her husband in filing their Federal income tax returns for the years in issue, reference to the petitioner will hereinafter be limited to petitioner Richard L. Westerman (Richard).

During the years in issue, petitioner was a medical doctor, and was employed by Mead Johnson Co., an Evansville, Ind., based pharmaceutical firm. Petitioner's specialty was nutritional research, and in the course of his work it was necessary that he make frequent business trips to various parts of this country, as well as occasional trips to foreign countries. Some of these trips were made in petitioner's private airplane, and up to May 18, 1966, petitioner received reimbursement (based upon first-class air fare) from Mead Johnson Co. for flight expenses incurred during such trips. On May 18, 1966, the company discontinued the practice of reimbursing its employees for costs associated with the business use of privately owned airplanes. Even so, petitioner continued to use his private airplane for company trips. Thereafter, petitioner received reimbursement for personal expenses incurred during his business trips; however, no money was reimbursed to him for any of the costs associated with the use of his airplane.

During the years in issue, petitioner's aircraft was used for the following purposes:

TABLE 1

| Purpose | 1965 | | 1966 | |
|---|---|---|---|---|
| | Hours | Percentage of hours flown | Hours | Percentage of hours flown |
| Personal use | 17 | 5.5 | 28 | 23 |
| Employer's business | 137 | 44.5 | 42.60 | 35 |
| Rental to others | 154 | 50.0 | 50.56 | 42 |
| | 308 | 100.0 | 121.16 | 100 |

480

On his income tax returns for the years 1965 and 1966, petitioner treated the operation of his airplane as a business, and determined losses in the following manner:

TABLE 2

| | 1965 | | 1966 | |
|---|---|---|---|---|
| Gross receipts | | $3,296 | | $2,128 |
| Expenses: | | | | |
| Materials and supplies | $256 | | $447 | |
| Depreciation | 2,000 | | 1,500 | |
| Inspection and maintenance | 794 | | 467 | |
| Insurance | 596 | | 768 | |
| Interest | 1,103 | | 1,052 | |
| Bank charges | 16 | | 5 | |
| Tie-down | 56 | | 24 | |
| Ferry charges | 96 | | ------ | |
| Membership, fees, etc. | 40 | | ------ | |
| Taxes | ---- | | 316 | |
| Miscellaneous | ---- | (4,957) | 99 | (4,678) |
| | | (1,661) | | (2,550) |

The "Gross receipts" figure in each of the above schedules was arrived at by combining (a) income derived from chartering the airplane to private parties [2] with (b) the imputed rental value of any personal (noncompany) use to which the airplane was put, and (c) an amount equal to the imputed rental value of all company trips for which the craft was used over the amount of reimbursement received by petitioner for making such trips. Of these amounts, only the rental activity figure reflected actual cash receipts. The remaining two categories were, in a sense, hypothetical since there was neither a discernible intent on the part of the petitioner to pay for his personal use of the craft, nor any expectation on his part that Mead Johnson Co. would in the future come forward with additional amounts of reimbursement. Nevertheless, 50 percent of the expenses claimed in petitioner's 1965 return and 56 percent of the expenses claimed in his 1966 return are attributable to these hypothetical income amounts.

Respondent's deficiency determination disallowed all expenses which were not attributable, on a prorata flying-time basis, to the actual rental income received by petitioner during the 2 years in issue.[3] Correspondingly, all income amounts not attributable to such rental activity were eliminated from "Gross receipts."

Whether these adjustments were proper is the question now before us.

---

[2] Hereinafter denoted by the phrase "rental activity."

[3] Some of the expenses which appear in Table 2 *supra* were disallowed in toto for want of substantiation. Additionally, the basic figures used by petitioner in computing depreciation expense was reduced from $2,000 to $1,250 for each of the years in issue. These adjustments were not contested in the petition filed by petitioner, and, accordingly, are not here in issue.

*Generally.*—We start with the proposition that expenditures associated with the maintenance of the airplane held for use in a trade or business may be deductible. *Reginald Denny*, 33 B.T.A. 738, 743 (1935). In the instant case, the allowance by respondent of those expenditures which were incurred as a result of petitioner's rental activities bears out this rule. However, where expenditures for the maintenance of an aircraft cannot be attributed to a trade or business carried on by the taxpayer, no deduction for such expenditures will be allowed. *C. Fink Fischer*, 50 T.C. 164, 171 (1968).

Moreover, whether or not a taxpayer will be treated as being engaged in a trade or business is a question of fact. *Higgins* v. *Commissioner*, 312 U.S. 212, 217 (1941). The question is one of a motive: unless a bona fide profitmaking motive can be discerned, the activity generating the expenditures in question will not be treated as a trade or business and a deduction under section 162 [4] will be disallowed. *Margit Sigray Bessenyey*, 45 T.C. 261, 273 (1965), affd. 379 F. 2d 252 (C.A. 2, 1967); *Kerns Wright*, 31 T.C. 1264 (1959), affirmed per curiam 274 F. 2d 883 (C.A. 6, 1960); and *Hirsch* v. *Commissioner*, 315 F. 2d 731, 736 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court.

With respect to the nonrental activities now before us,[5] we do not believe petitioner has satisfied the tests outlined above.

*A. Trips Benefiting Petitioner's Employer.*—Focusing initially on petitioner's use of the airplane for trips made in "pursuit of" his employer's business, no dispute exists as to the fairness of the hypothetical income amounts at which these trips were valued. However, it is asserted by respondent that a profitmaking motive cannot be attributed to the activities which gave rise to these hypothetical amounts since there was never any expectation of payment. Accordingly, respondent argues that any expenses associated with such activities cannot be taken as deductions. We agree.

As stated earlier, petitioner treated the expenditures in question as offsets against a hypothetical income amount which was arrived at by assigning an imputed rental value to all company trips for which petitioner's airplane was used, which amount was then reduced by reimbursements received by petitioner as a result of having made such trips.[6] As such the income figures being used by petitioner were totally

---

[4] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[5] Since no dispute exists as to the deductibility of (substantiated) expenses attributable to *actual* income received by petitioner from the rental of his plane, it is assumed, for purposes of this opinion, that a trade or business did exist to the extent of such rental activity.

[6] The net effect of this computation was to treat unreimbursed expenditures as income from the Mead Johnson Co.

academic since there is no indication that petitioner was either entitled to any additional reimbursement or ever expected to receive from the company the items of hypothetical income which he attributed to it. Therefore, there being no profitmaking motive which can be associated with the "business" trips made by petitioner, we hold that the deductions taken by petitioner, as a result of expenses incurred during these trips, were properly disallowed by respondent. See cases cited *supra.*

The fact that the trips which generated the expenses in question were made in pursuit of the business of petitioner's employer is not enough to alter the above result. For where an employee, knowing that reimbursement will not be forthcoming, voluntarily undertakes a course of action on behalf of his employer, any expenses arising from such an undertaking are normally viewed as being prima facie personal. See *Noland* v. *Commissioner*, 269 F. 2d 108, 109 (C.A. 4, 1959), affirming a Memorandum Opinion of this Court,[7] where it is said that:

> The business of a corporation is not that of its officers, employees or stockholders, and though the individual stockholder-executive, in his own mind, may identify his interest and business with those of the corporation, they legally are distinct, and, ordinarily, if he voluntarily pays or guarantees the corporation's obligations, his expense may not be deducted on his personal return. * * *
>
>   *   *   *   *   *   *   *
>
> When [the] corporation, reimbursing its officers and employees for direct expense incurred in furthering its business, does not reimburse an officer for particular expense, that expense prima facie is personal * * * either because * * * [it] was voluntarily assumed or because it did not arise directly out of the exigencies of the business of the corporation. * * *

As we have noted above, there is no evidence in this case to suggest that petitioner acted other than voluntarily, or that he acted in the hope of receiving any more reimbursement than that which he actually received. Moreover, the mere fact that the company may have benefited from the expenditures incurred by petitioner does not strengthen his position since it is a well-established rule that, in the absence of a binding obligation, expenses incurred by one taxpayer for the benefit of another may not be deducted by the former. *Deputy* v. *du Pont*, 308 U.S. 488, 493 (1940); *Noland* v. *Commissioner, supra;* and *Columbian Rope Co.*, 42 T.C. 800, 815 (1964).

*B. Personal Trips.*—Much of our discussion relating to the expenditures incurred by petitioner during his "business" trips applies with equal force to the deductions taken by him with respect to his personal trip expenditures. Once again, no profitmaking motive can be attrib-

---

[7] See also *Robert G. Fairburn,* T.C. Memo. 1969–77; and *John T. Harley, Jr.,* T.C. Memo. 1969–226.

uted to these trips since there was never any realistic expectation of payment. This is because, at any given time, the money used by petitioner to pay for such trips would always be equal to the amount received by him as payment. Even if this were not so (as where book entries might possibly have been used to create the illusion of expected payment), we would still deny the deductions sought by petitioner. For where, as here, an airplane has potential as an income-producing instrumentality, but is frequently used by its owner for activities which on the basis of normal, everyday experience would ordinarily be deemed personal, then, in our estimation, any costs associated with such personal use must also be deemed personal. Accordingly, we hold for respondent.

*Conclusion.*—Based on the above, we have held that respondent acted properly in disallowing the expenditures herein in dispute. In so holding, we note that the possibility of double taxation in this case has been eliminated by respondent's having removed from "Gross receipts" the hypothetical income figures included therein by petitioner.

*Decision will be entered for the respondent.*

---

[1] Unless otherwise specified, all statutory references are to the Internal Revenue Code of 1954.