JOHN M. FRENCH AND JOANA E. FRENCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
French v. Commissioner
Docket No. 15509-88
United States Tax Court
T.C. Memo 1990-314; 1990 Tax Ct. Memo LEXIS 332; 59 T.C.M. (CCH) 966; T.C.M. (RIA) 90314; June 25, 1990, Filed *332 Decision will be entered under Rule 155. Ernest C. Pinza, for the petitioners. Robert J. Misey, Jr., for the respondent. SCOTT, Judge. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1984 in the amount of $ 19,360.30 and additions to tax for that year under section 6653(a)(1) and section 6661 in the respective amounts of $ 884.76 and $ 3,523.25. [1] Respondent also determined that petitioners were liable for an addition to tax under section 6653(a)(2) in an amount to be determined. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision: 1) whether petitioners may deduct, as ordinary and necessary employee business expenses under section 162, a portion of the costs (including depreciation) of operating an airplane owned by petitioner, John M. French, which he used during the course of his employment with Valley Data Sciences, Inc.; 2) whether *333 the costs of general maintenance of the airplane and training flights are ordinary and necessary expenses which may be deducted under section 162 as employee business expenses; 3) whether petitioners may deduct, as ordinary and necessary expenses incurred in the production of income under section 212, the operating costs (including depreciation) of flying the airplane to petitioners' rental property; 4) whether petitioners are liable for additions to tax under section 6653(a)(1) and section 6653(a)(2); 5) whether petitioners are liable for an addition to tax under section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, were residents of San Jose, California at the time of the filing of the petition herein. Petitioners filed a joint Federal income tax return for the calendar year 1984 on February 25, 1985. They filed an amended return for the calendar year 1984 on April 13, 1985. Petitioner John M. French (Mr. French or petitioner), is a licensed airplane pilot. Petitioner has been licensed to fly personally owned airplanes since 1965. Petitioner owned a single-engine airplane prior to 1983, but after several *334 in-flight problems, became concerned for his and his family's safety in that airplane and therefore, in 1983, purchased a twin-engine Beechcraft Baron 58 (the Beechcraft or the airplane). In order to qualify to fly this type of airplane, petitioner was required to take additional in-flight training during 1984 in the areas of instrument landings and navigation techniques. During 1984, petitioner encountered numerous mechanical difficulties with his airplane and made several trips to Beechcraft West Hayward and L.A.C. Avionics for repairs. If any repairs were performed, petitioner would always test-fly his airplane to ensure that the repairs had been performed properly. Petitioner kept a chronological flight log in which he listed the date, destination, flight time, and purported purpose of each flight taken during 1984. According to petitioner's log he flew a total of 90.7 hours in 1984. Petitioner is an electronics engineer. In 1982, he helped form a corporation named Valley Data Sciences, Inc. (VDS). In 1984, petitioner was employed by VDS as vice president of engineering and was a salaried officer in charge of production. His salary was approximately $ 85,000 per annum. *335 He was also entitled to receive bonuses if VDS became profitable; however, during 1984, VDS was still struggling and bonuses were not appropriate. During 1984, petitioner owned approximately 15 percent of the stock of VDS. VDS manufactured computer hardware and software. Among the items of hardware manufactured and sold by VDS was a 40-pound "box" which had been designed by Mr. French. The box contained several "PC cards," a power source, and a small computer so that it could interface with personal computers. Semiconductor manufacturers were interested in the box because it could be used to program and test the semiconductor silicon chips which instruct a personal computer how to perform certain initialization and start-up tasks. VDS had both internal sales officers and external sales organizations which represented it throughout the United States. In its sales advertising, VDS claimed that the box could be quickly adapted to the unique requirements of a particular computer manufacturer's semiconductors. On several occasions during 1984, petitioner was contacted by VDS sales representatives and was requested to accompany them on "short-fuse" sales calls in the Bay Area and *336 around the United States so that he could quickly adapt and demonstrate the box to potential customers the following day. Although commercial flights to customers' locations were generally available, petitioner did not investigate the possibility of flying commercially. Petitioner generally flew his personally owned airplane on sales-related trips. Petitioner considered the "box" to be too big to carry on board a commercial airplane and too fragile to check as baggage. According to petitioner's flight log, on March 18, 1984, he adapted the box and flew it from San Jose to Van Nuys, California, so that he could accompany two representatives from ELCOR Electronic Sales (ELCOR) on several sales calls. On his way to Van Nuys, petitioner flew his mother-in-law to Long Beach and this added 20 to 25 minutes to the duration of the flight which totaled 4.4 hours. Petitioner returned to San Jose several days later but left the "box" in Van Nuys. On April 11, 1984, petitioner flew his airplane to Van Nuys to pick up the "box" and transport it to a VDS regional sales office located in Santa Ana where he accompanied the regional sales director on two sales calls. On the following day, he flew *337 the regional sales manager to Palomar Airport where they made a third sales presentation. After the presentation, he flew the regional sales manager back to Santa Ana and the box back to Van Nuys. He then returned to San Jose. Petitioner's flight log indicates that he made several more trips in connection with business of VDS in 1984. On April 25, 1984, he flew to Columbia, a small town in the Sierras, to pick up a shipment of transformers from a supplier. On June 7, 1984, he flew several sales representatives to Harris Ranch to attend a luncheon. According to petitioner's flight log, he made another 4-hour flight in connection with VDS sales on June 17, 1984. On October 30, 1984, petitioner flew himself, his equipment, the VDS director of software, and two engineers to an electronics trade show and convention where VDS had rented a booth. He returned to San Jose the same day. In early July 1984, petitioner flew his family to Sun Valley for a one-week summer vacation. During the course of his vacation, Mr. Bob Soto, the new president of VDS, requested that petitioner return to San Jose for a 2-1/2-hour meeting. Petitioner flew back to San Jose on July 3, 1984, attended the *338 meeting, and then returned again to Sun Valley on July 4, 1984. Total round-trip flying time from Sun Valley to San Jose and back again was 6.3 hours. Petitioner requested and received reimbursement for the cost of fuel expended during the 6.3-hour trip. Other than in this instance, petitioner never requested that VDS reimburse him for the fuel and operational expenses of flying his airplane on behalf of VDS in 1984. Petitioner was reimbursed by VDS for other travel expenses and was reimbursed for the costs of leasing a vehicle which he used in connection with his VDS employment. If petitioner had requested that VDS reimburse him for the costs of flying his plane on behalf of VDS, he would probably have received such reimbursement. In addition, VDS would probably have reimbursed petitioner for the costs of chartering a plane at an hourly rate had petitioner chosen to do so. However, petitioner had an informal understanding with the president of VDS that he would not request reimbursement for the costs of operating his airplane on behalf of VDS until the company became profitable. Therefore, petitioner did not request reimbursement at, for example, an hourly rate for the use of *339 his airplane. Mr. French also flew his airplane to Mammoth Lakes Resort (Mammoth Lakes) nine times during 1984. Petitioners owned a condominium (the condo) at Mammoth Lakes which they leased on a long-term basis during the winter months and rented on a short-term basis during the summer months. Mammoth Lakes is both a winter skiing resort and a summer resort with swimming and hiking available. When petitioners purchased their condo in 1974 for $ 30,000, they employed a manager to lease and maintain the condo. Petitioners became displeased with the quality of the maintenance performed by the manager. Thereafter, petitioners did not have an employed manager to maintain the condo, but were friendly with the manager of the condo who would on occasion render some assistance to them. Management companies were available at Mammoth Lakes to render services for a percentage of rental income. Petitioners advertised the rental of the condo in the Los Angeles Times. From November 1983 through May 1984, they leased the condo at a rate of $ 750 a month. During the summer months of 1984, petitioners rented the condo for approximately $ 250 to $ 300 per week. In addition to rental income, petitioners *340 hoped that they could eventually sell the condo at a profit and, in 1986, they did sell it for $ 80,000. On the morning of January 2, 1984, petitioner flew his airplane to Mammoth Lakes to take the son of a neighbor to drive a car petitioners left there back to San Jose. While he was there, petitioner installed screens around pipes which ran up from the ground so that animals could not crawl up into the walls of the condo. The tenant had called to tell petitioner that small animals were getting into the walls around the pipes. Petitioner had called the condo manager who had known of the problem in other condos and suggested the screens around the pipes. Petitioner flew back the same day. Total flight time for the trip was approximately 2 hours. On April 28, 1984, petitioners' neighbor's son drove the car back up to Mammoth Lakes, petitioner flew up to meet him, and they flew back to San Jose together. Flight time for this trip was 1.8 hours. Petitioners' neighbors in San Jose had complained about the car being parked on the street so petitioners decided to return it to Mammoth Lakes. The tenants who leased the condo from Thanksgiving to Memorial Day left early and on May 19, *341 1984, petitioner flew up to Mammoth Lakes. In the flight log the purpose of the trip was listed as cleaning the condo. Because the tenants had left early, petitioner considered it an opportunity for the family to go up to Mammoth Lakes and see if any repairs were needed to the condo. They found some repairs were needed, particularly to the fireplace. Petitioner called the condo manager to determine where he could buy the materials needed for the repairs and found that no one in Mammoth Lakes carried the materials. He returned from Mammoth Lakes the same day. The total duration of the flight was 2 hours. Later petitioner obtained the materials to repair the fireplace and flew back to Mammoth Lakes on Saturday, June 11, 1984, accompanied by his wife and daughters. One of petitioners' daughters was born in 1969 and the other in 1972. The purpose of this trip was shown in the log as repair and maintenance work on the condo. They flew back to San Jose on Monday, June 13, 1984. The total flight time of this trip was 2.2 hours. On June 28, 1984, petitioner and his mother-in-law flew to Mammoth Lakes. The purpose of the trip is stated in the log to be completing the cleaning and preparation *342 of the condo for summer rental. Total flight time here was 2 hours. Petitioners' condo had been rented during the month of July 1984. On Saturday, August 5, 1984, petitioners, accompanied by their daughters, flew to Mammoth Lakes. The purpose of this trip as stated in petitioner's log was to clean the condo and repair any damage that had been caused by the July renters. Petitioners and their daughters returned to San Jose on August 6, 1984. Total flight time on this occasion was 2.5 hours. On September 26, 1984, petitioner again flew to Mammoth Lakes and showed the purpose of the trip in the log book to be preparing the condo for winter leasing. The flight time for this trip was 2.5 hours. In November 1984, petitioners were contacted by Ms. Kim Brennen, who indicated that she wanted to lease the condo for a 12-month period. On November 17, 1984, petitioner flew to Mammoth Lakes where he concluded a leasing contract and obtained a deposit check from Ms. Brennen. The purpose of the flight as shown in the log book was "Brennen lease." The total flight time was 2.5 hours. Several weeks later, Ms. Brennen contacted petitioners and informed them that she wished to terminate the *343 lease. Petitioners told her that they would attempt to advertise and re-lease the condo but that, in the interim, they would hold her liable for the rent. On December 22, 1984, petitioner flew to Mammoth Lakes. The purpose of this trip as shown in the log book was "Delaney lease." The total flight time listed for this trip was 2.7 hours. Petitioners' 1984 Federal income tax return was prepared by an agent enrolled to practice before the Internal Revenue Service. On their 1984 return, petitioners reported total condo rental income in the amount of $ 7,358. Petitioners claimed condo expense deductions of $ 26,249 and depreciation of $ 1,553, resulting in a loss from the condo of $ 20,444. Among the expenses claimed were advertising $ 572, cleaning $ 116, carpenter and materials $ 191, electrical repairs $ 144, misc. repairs $ 45, supplies $ 59, telephone $ 84 and traveling $ 18,854. The "traveling" was explained in an attached schedule as expenses of airplane flights. Petitioners reported wage income from VDS in the amount of $ 85,000. Petitioners also reported gain on the sale of certain VDS stock (which they had acquired in 1982 for $ 4,000) in the amount of $ 21,000. On a *344 schedule attached to the return, petitioners reported that Mr. French paid a total of $ 34,214.38 (including the costs of fuel, oil, insurance, related interest, licenses, taxes, maintenance, and training) to operate his airplane during 1984. Petitioners also calculated depreciation on Mr. French's airplane utilizing the straight-line method. Petitioners then deducted, as employee business expense or rental income production expense, a ratable portion of these costs based on the percentage of Mr. French's total flight time which they claim he devoted to VDS business or the Mammoth Lakes condo, respectively. Petitioners deducted that portion of the costs and depreciation allocable to maintenance and training flights, $ 11,604, as expenses of a Schedule C "consulting" business which produced income of $ 300 during 1984. Petitioners deducted airplane costs and depreciation allocated to "Com Real Estate" of $ 2,805.09, as rental income production expense attributable to an apartment house which petitioners owned in San Jose. Rental receipts from the San Jose apartment house were reported on petitioners' 1984 return. Mr. French kept his books, including records relating to his airplane, *345 on a computer. The enrolled agent who prepared petitioners' 1984 return supplied forms to petitioners which they completed and returned to him. He prepared petitioners' returns from these forms. The same enrolled agent had also prepared petitioners' prior year tax returns. Petitioners had claimed deductions for expenses paid or incurred in traveling by airplane on these prior year returns. Some of these returns had been audited by the Internal Revenue Service and airplane expenses which had been claimed as deductions thereon had not been disallowed. Mr. French prepared the information regarding the airplane expenses for submission to his tax return preparer in the same manner as he had used in prior years. A computer-generated document entitled "1984 Tax Preparation Form" was attached to petitioners' 1984 tax return. The document contained a breakdown of 1984 airplane expenses (fuel, insurance, repairs, etc.), as well as a use-percentage breakdown. For example, according to the document, 13.147 percent of total usage was devoted to "Personal Use," 33.267 percent of total usage was devoted to "Condo," 27.490 percent of total usage was devoted to "VDS." In his notice of deficiency, *346 issued on March 29, 1988, respondent disallowed all amounts (i.e., costs and depreciation) deducted as employee business expenses and rental income production expense to the extent attributable to the operation of Mr. French's airplane. At the trial of this case, petitioners were granted leave, without objection by respondent, to file an amendment to their petition in which they alleged that all the costs and depreciation attributable to Mr. French's training and maintenance flights should be deductible as employee business expense under section 162 and that the costs and depreciation allocated to "Com Real Estate" should actually be allocated to the Mammoth Lakes condo. OPINION The first issue for decision is whether petitioners properly deducted, as employee business expenses under section 162, the airplane costs and depreciation allocable to the flights which Mr. French made to conduct business for VDS during 1984. Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on his trade or business. Section 167(a) allows a taxpayer to deduct, as depreciation, a reasonable allowance for the exhaustion, wear, *347 and tear of property used in the taxpayer's trade or business. It is well settled that, even though a taxpayer may perform services on behalf of a corporation, for purposes of section 162, such taxpayer is considered to be in a trade or business of being an employee separate and apart from the trade or business of his corporate employer. Noland v. Commissioner, 269 F.2d 108, 111 (4th Cir. 1959), affg. a Memorandum Opinion of this Court; Lucas v. Commissioner, 79 T.C. 1, 6 (1982); Primuth v. Commissioner, 54 T.C. 374, 377 (1970). The employee may thus deduct reasonable expenses which are ordinary and necessary in the carrying on of his trade or business of being an employee. He may not, however, deduct, as the costs of carrying on his trade or business, amounts which are properly deductible by his corporation as its costs in carrying on its trade or business. Deputy v. Du Pont, 308 U.S. 488, 493 (1940); Noland v. Commissioner , supra at 111; Gantner v. Commissioner, 91 T.C. 713, 725 (1988). Furthermore, he may not deduct personal expenses and bears the burden of proving that the expenses for which he claims a deduction are not personal in nature. Section 262(a); Sharon v. Commissioner, 591 F.2d 1273, 1274 (9th Cir. 1978)(per *348 curiam), affg. 66 T.C. 515 (1976); Heineman v. Commissioner, 82 T.C. 538, 542 (1984). Respondent contends that petitioner's expenses of operating his airplane when he used it in connection with the business of VDS were personal in nature and were neither ordinary nor necessary to Mr. French's trade or business of being an employee of VDS. We agree with respondent. It is clear from the record that Mr. French was not required, as a necessary condition of his employment, to fly his plane or incur airplane expenses on behalf of VDS. For example, at trial, Mr. French testified that: I had talked with the president, Gene Anderson, at the time we had started the company, indicating that, "Gene, I had a plane. We could use it to advantage. We could make quick response." And that, you know, until the company became profitable, I would absorb the cost of doing that, anticipating that we would be profitable fairly shortly. Unfortunately, that was not the case.
This testimony indicates that Mr. French voluntarily undertook to fly his airplane on behalf of VDS from the outset and that he was not expected nor required to fly his airplane as a condition of his employment by VDS. Although an *349 employee or stockholder may, in his own mind, identify his interests with those of his corporation, they are legally distinct and, if he voluntarily pays the corporation's obligations, his expenses may not be deducted on his personal return. Noland v. Commissioner, supra at 111; Westerman v. Commissioner, 55 T.C. 478, 482 (1970).The costs of operating Mr. French's airplane were not a "necessary" expense of carrying on his trade or business of being an employee since they were voluntarily assumed by petitioner. Therefore, they may not be deducted on petitioners' return. Petitioners may not deduct such expenses for still another reason. Where a corporation, which normally reimburses its employees for the costs of carrying on its business, does not reimburse an employee for a particular expense, the presumption must be that such expense is personal in nature either because the expense was not paid in carrying on the corporation's business or because the employee failed to request reimbursement and thus voluntarily assumed an expense of the corporation. Noland v. Commissioner, 269 F.2d 108 (4th Cir. 1959), affg. a Memorandum Opinion of this Court; Westerman v. Commissioner, supra at 482; *350 Stolk v. Commissioner, 40 T.C. 345, 357 (1963); affd. per curiam 326 F.2d 760 (2d Cir. 1964).Thus, where an employee fails to seek reimbursement to which he is entitled, we have not allowed a trade or business deduction for the underlying expense. E.g., Leamy v. Commissioner, 85 T.C. 798, 810 (1985); Lucas v. Commissioner, 79 T.C. 1, 7 (1982). At trial, Mr. French testified that, had he requested reimbursement for the cost of fuel expended during the VDS flights, he probably would have been reimbursed and that he was reimbursed on one occasion when he requested reimbursement. Mr. French also testified that, had he chartered or rented an airplane, VDS would probably have reimbursed him for the costs of such charter or rental. He in effect stated that it was his choice to fly his own airplane on VDS business and forego any right to be reimbursed for airplane costs and depreciation associated with such flights. Thus, it appears, from this record, that a procedure existed whereby Mr. French could have requested, and would have received, reimbursement for the costs of operating his airplane but simply chose not to do so. In Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. a *351 Memorandum Opinion of this Court, the taxpayer was not aware that he was entitled to be reimbursed by his employer for the costs of operating his personal automobile in the course of his employment. The Ninth Circuit Court of Appeals, in denying the taxpayer's claim that he should be allowed to deduct such costs on his personal return, stated that: Numerous courts have held that an expense is not "necessary" under section 162(a) when an employee fails to claim reimbursement for the expenses, incurred in the course of his employment, when entitled to do so. [Citations omitted.] We agree with the reasoning of these courts. * * * The rule * * * forecloses an avenue for tax manipulation by preventing the taxpayer from converting a business expense of his company into one of his own simply by failing to seek reimbursement. [Citation omitted.]
[Orvis v. Commissioner, supra at 1408.] In the instant case, Mr. French did not ask to be reimbursed for the costs of operating his airplane on behalf of VDS; nor have petitioners established that he would not be entitled to such reimbursement if he had merely asked. [2] Even if Mr. French believed that by operating his airplane on behalf of VDS and *352 absorbing the costs of these flights he would help his corporation become profitable, he cannot convert what would otherwise be a corporate expense into his own by simply failing to claim reimbursement. The result we reach here is not inconsistent with the cases cited by petitioners on brief. [3] *353 In each such case, the taxpayer's earnings (in the form of sales commissions, bonuses based on sales volume generated, or profits of a sole proprietorship) were directly dependent on the amount of sales income he generated for his company. We, therefore, allowed the taxpayer in each case to deduct the cost of flying his airplane to his customers' place of business as a necessary expense of carrying on his trade or business of being an employee or owner of the business. There is no indication in the cases involving sales employees that the employee was entitled to receive reimbursement from the company for which he was a salesman. In this case, Mr. French was the vice president of VDS in charge of engineering; he was not a VDS salesman. He did not receive a commission or increase in bonus based on the amount of sales his flights generated. Instead, any bonus which he might have received in addition to his base salary would have been based on the general profitability of VDS which, in turn, could be dependent on any number of factors (i.e., more efficient manufacturing processes or cheaper design), sales volume being just one such factor. Also, petitioner, as above stated, was entitled to reimbursement from VDS had he claimed such reimbursement. Petitioners have failed to show that Mr. French's flights to conduct business for VDS, and the costs associated therewith, had a direct bearing on the amount of his compensation or that he was required to bear such costs. Therefore, such costs are not deductible as ordinary and necessary expenses of carrying on his trade or business of being an employee of VDS. Heidt v. Commissioner, 274 F.2d 25 (7th Cir. 1959), affg. a Memorandum Opinion of this Court. Furthermore, Mr. French's hope (in his capacity as a shareholder *354 of VDS) that his absorption of the airplane's operating costs would help VDS to become profitable and that his VDS stock would consequently increase in value does not support petitioners' deduction of such costs on their personal return. It is well settled that, for Federal income tax purposes, a corporation (even a wholly-owned corporation) is treated as a separate entity from its shareholders and that the latter may not deduct, on their personal return, expenses paid or incurred in furthering the former's trade or business. Deputy v. Du Pont, 308 U.S. 488, 494 (1940); Gantner v. Commissioner, 91 T.C. 713, 725 (1988); Leamy v. Commissioner, 85 T.C. 798, 809 (1985).The expenses at issue here were clearly paid or incurred in the furtherance of VDS's business and, therefore, petitioners may not deduct such amounts on their personal return. As noted previously, petitioners amended their petition to allege that airplane costs and depreciation allocable to maintenance and training flights were properly deductible as employee business expense attributable to VDS-related activity. However, we have determined that petitioners may not deduct any amounts expended in connection with VDS-related *355 activity and thus may not deduct maintenance and training expenses as employee business expenses under section 162. Furthermore, petitioners have not shown that such amounts are deductible in connection with petitioners' purported consulting business or any other activity. Therefore, we sustain respondent's determination that petitioners may not deduct such maintenance and training expenses on their 1984 return. The next issue for decision is whether petitioners may deduct, under section 212, the airplane costs and depreciation which they allocated to the flights made to the Mammoth Lakes condo in 1984. At the outset it is noted that petitioners made a number of errors in computing Mr. French's total flight time and the number of hours devoted to condo-related activity, even on the basis they purportedly used for the computation. Petitioners incorrectly based their computations on the assumption that Mr. French had flown a total of 100.4 hours in 1984. In addition, they improperly omitted 3.5 hours of "non-related use" from their computations and thus allocated no airplane costs and depreciation to such use. However, Mr. French's own flight log reveals that he actually flew a *356 total of only 90.7 hours. In addition to the above errors, when calculating the percentages allocable to each activity, petitioners under their own method overstated the amount of use (and consequently the amount of deductions) allocable to the condo by at least 13.2 hours. They determined that Mr. French spent a total of 33.4 hours flying between San Jose and the condo even though, according to petitioner's flight log, only 20.2 hours of flight time were devoted to condo-related activity. Petitioners have given no reason why costs and depreciation of the airplane initially allocated to their San Jose apartment property should be allocated to the Mammoth Lakes property and have offered no evidence whatsoever which would justify the reallocation of such expenses to the condo. Taking into account the adjustments discussed above, Mr. French's total flight time and the costs and depreciation attributable thereto, according to his flight log, should have been allocated among his various activities as follows: Flight
Percent of
Airplane
Depre
Time
Total Flight
Costs
ciation
Activity
(Hours)
Time (%)
Personal Use
13.2
14
$  4,790
$  2,939
Maintenance
11.5
13
$  4,448
$  2,729
Training
09.6
11
$  3,763
$  2,310
Condo
20.2
22
$  7,527
$  4,619
Valley Data Sciences
27.6
30
$ 10,264
$  6,299
Com Real Estate
05.1
6
$  2,053
$  1,260
Nonrelated Use
03.5  4
$  1,369
$    840
Total
90.7
100
$ 34,214
$ 20,996
*357 Under the above allocations, if all petitioners' flights shown as expenses of the condo in the log were deductible expenses, the total amount of the deduction would be $ 12,146 ($ 7,527 plus $ 4,619). Section 212 provides that a taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or maintenance of property held for the production of income. An "ordinary" expense is one that is normally to be expected, in view of the circumstances, and a "necessary" expense is one that is appropriate and helpful to the income-producing activity. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Palo Alto Town & Country Village, Inc. v. Commissioner, 565 F.2d 1388, 1390 (9th Cir. 1977). Respondent does not contend that petitioners did not hold the Mammoth Lakes condo for the production of income. They advertised the rental of the condo in the Los Angeles Times and did lease or rent the condo for a substantial portion of the year at issue for which they received total gross rental income in the amount of $ 7,358. Petitioner also testified that he hoped that the condo would appreciate in value and that petitioners could *358 eventually sell it at a profit. Although the amount of expenses petitioners deducted as compared to the rental income received appears to be unreasonable, this does not change the fact that under section 212, petitioners are entitled to deduct the ordinary and necessary costs of maintaining, repairing, and renting the condo. It does, however, require that each claimed deduction be scrutinized to determine if it is an ordinary and necessary business expense or a personal expense claimed as such. Expenses which are personal in nature are not deductible. Section 262. To be deductible under section 212 as is the case under section 162, costs must be "reasonable" in amount and must bear a reasonable and proximate relationship to the management, conservation, and maintenance of the condo. Section 1.212-1(d), Income Tax Regs.; United States v. Haskel Engineering & Supply Co., 380 F.2d 786, 788 (9th Cir. 1967); Soliman v. Commissioner, 94 T.C. 20, 30 (1990). Respondent contends that the costs and depreciation associated with Mr. French's flights to the Mammoth Lakes condo are not deductible under section 212. In support of his contention, respondent points out that Mr. French enjoyed flying *359 to Mammoth Lakes, that his family enjoyed skiing and swimming, and that a family member or members often accompanied petitioner to the condo. Respondent contends that all of petitioner's trips to the condo were actually disguised family vacations and argues that the costs and depreciation attributable thereto are nondeductible personal expenses. We have analyzed each of petitioner's trips to the condo and agree with respondent that some of them had little, if any, relationship to the management of the condo. The first trip made in 1984 which is shown in the log as "screens" for pipes appears from the testimony to be a trip to take a neighbor's son up to the condo to drive a car owned by petitioners back to San Jose. This trip was on January 2, 1984. The evidence is clear that the primary purpose of the trip was to have petitioners' automobile driven back to San Jose. Petitioner testified to this effect. He had talked to the condo manager about animals coming into the walls by the pipes. It seems reasonably clear that petitioner put these screens on himself while at the condo, rather than arranging by telephone to have it done merely because he was at the condo having flown up *360 for personal reasons. No business reason is shown for bringing the automobile to San Jose. The next flight was to pick up the same young man who drove the car back when petitioners' neighbors in San Jose complained about it being parked on the streets. This flight was also personal. The trip to return the automobile was on April 28, 1984. The next flight taken, on May 19, 1984, also appears to be for personal reasons. The tenants who had rented the condo from Thanksgiving through Memorial Day left early and in petitioner's own words this gave his family an "opportunity" to visit the condo. Petitioners and their family did nothing on this trip except to notice that some repairs needed to be made. From the testimony, we conclude that this trip also was personal. On June 11, 1984, petitioners and their daughters flew to the condo and returned on June 13, 1984. While at the condo petitioners made some repairs and cleaned the condo. While a suspicion arises as to the contribution to the activity of petitioners' twelve- and fifteen-year-old daughters, petitioner testified that they helped with the cleaning. At least there was a business purpose for this trip and, apparently, repairs *361 were made and cleaning done during the two-and-one-half- or three-day trip. On June 28, 1984, petitioner flew his mother-in-law to Mammoth Lakes. The purpose of the trip is listed as completing the cleaning of the condo. There is no explanation of why four people could not have completed cleaning the condo on the June 11 to 13 trip, particularly when the purpose of taking the daughters was stated to be so they could help with the cleaning and the nature of the repair work, which petitioner testified was done on the June 11 to 13 trip, is considered. We conclude that the primary purpose of the June 28, 1984, trip was personal and not business. Petitioners again flew to the condo with their daughters on August 5, returning on August 6, 1984. The purpose of this trip is stated to be to clean the condo and repair any damage done by July renters. The nature of the repairs, if any, is not shown. However, it is reasonable that after the July renters left, the condo may have needed some cleaning and possibly some minor repairs. Again, it appears that four people may not have worked excessively hard for two days to clean a two-bedroom condo. However, if it is reasonable for petitioners *362 to care for the condo themselves, the trip had some business purpose. The next trip, on September 26, 1984, is shown in the log as, to prepare the condo for winter leasing. There is no showing of whether the condo had been occupied since the trip in August. The weight of the evidence indicates that this trip was primarily, if not entirely, personal. The final two trips, one on November 17, 1984, and the other on December 22, 1984, were for the purpose of signing winter leases for the condo. They appear to be business connected. We, therefore, conclude that only the trips of June 11, August 5, November 17, and December 22, 1984, were connected with the maintaining of the condo. The other trips were personal. Respondent argues that even to the extent petitioners' trips to the condo were business related, the costs and depreciation allocable to Mr. French's flights were not "reasonable" in relation to the income which the condo produced. Respondent points out that petitioner chose to fly his own twin-engine airplane to Mammoth Lakes, at an overall cost of approximately $ 609 an hour or over $ 1,200 a trip, rather than taking a commercial flight, renting a smaller plane, or driving, *363 even though the latter forms of transportation might have been less expensive. Respondent also points out that petitioners could have avoided the costs of transportation altogether had they simply hired a management company or repairman to perform the tasks required to maintain the condo. If they had done so, there would have at least been some possibility that rental expenses would not have exceeded $ 7,358, their gross rental income. Respondent concludes that, because the amounts claimed by petitioners are not reasonable, they cannot be deducted under section 212. It is true that an expenditure may be ordinary and necessary by nature yet unreasonable in amount. United States v. Haskel Engineering & Supply Co., 380 F.2d 786, 788 (9th Cir. 1967). However, we do not consider the expenses here to be unreasonable given the surrounding circumstances, if it is considered reasonable for petitioners to personally manage the condo. Petitioner testified at trial that, in the summer months, it would have taken him approximately 5-1/2 hours to drive to Mammoth Lakes. He further testified that, during the winter months, it would have taken him approximately 7-1/2 hours because some roads leading *364 to Mammoth Lakes would be closed due to snow. Petitioner was aware of only one commercial flight to Mammoth Lakes which arrived in the late morning and departed in the early afternoon. Either of these alternate modes of transportation would have been time consuming. Petitioner testified that he considered the twin engine plane to be safer than a single engine plane. Both petitioners held responsible full-time positions and if it was reasonable for them to manage the condo personally, it was also reasonable for them to better utilize their time by flying to the condo in Mr. French's personal plane. Implicit in respondent's arguments is that the expenses of flying Mr. French's airplane to Mammoth Lakes were per se unreasonable because they caused or increased substantially petitioners' taxable loss from the rental of the condo. Respondent's regulations provide that: ordinary and necessary expenses paid or incurred in the management, conservation, or maintenance of a building devoted to rental purposes are deductible notwithstanding that there is actually no income therefrom in the taxable year * * *. [Section 1.2121(b), Income Tax Regs.]
Therefore, the mere fact that petitioners sustained *365 a loss rather than a profit during 1984, or the fact that this loss may have been caused by the use of Mr. French's airplane, would not, per se, render unreasonable the amounts properly applicable to the condo business flights. There remains the question of whether under the circumstances here present it was reasonable for petitioners to manage their own condo rather than seek out a management company or repairman to care for their condo. They had previously employed a management company and were displeased with the services performed and the repairs made. Petitioner testified that one of the reasons they were dissatisfied with the management company was that they did not make a profit under that arrangement. Certainly they did not improve their situation in this respect by taking over the management themselves. The issue is not free from doubt, but on the basis of the record as a whole, particularly petitioner's desire to keep the condo in good condition to profit from its resale, we conclude it was not unreasonable for petitioners to manage the condo themselves and that the costs of the flights of June 11, August 5, November 17, and December 22, 1984, were ordinary and necessary *366 expenses of their management of the condo. The total hours of these flights was 9.9 and petitioner's cost per hour, including depreciation of flying his plane based on his schedule and 90.7 hours of total flying time, is $ 608.71. Therefore, petitioners are entitled to deduct $ 6,026 in 1984 as transportation expenses in connection with managing their condo. The next issue is whether petitioners are liable for additions to tax under section 6653(a)(1) for their 1984 tax year because a portion of their 1984 underpayment was due to negligence or intentional disregard of the rules and regulations. [4] *368 Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. United States, 775 F.2d 1092 (9th Cir. 1985); Crocker v. Commissioner, 92 T.C. 899, 916 (1989).If any portion of an underpayment is due to negligence or intentional disregard of the rules and regulations, the addition to tax under section 6653(a)(1) applies to the entire underpayment. Clearly, some part of the underpayment in this case is due to negligence. Petitioners claimed airplane transportation expenses in connection with their San Jose property *367 and in connection with Mr. French's consulting business. At trial, petitioners claimed this was a mistake and these amounts should have been claimed in connection with other activities without showing any connection of these expenses with the other activities. Clearly this is negligent and petitioners are liable for the addition to tax under section 6653(a)(1). Section 6653(a)(2) imposes an addition to tax of 50 percent of the interest applicable to the portion of the underpayment of tax resulting from negligence or intentional disregard of rules and regulations. This requires us to determine whether the underpayment with respect to each item on which we have sustained respondent was due to negligence. Respondent argues that the great weight of authority indicates that petitioners were not entitled to deduct, as employee business expenses, costs and depreciation attributable to trips made on behalf of VDS and, therefore, petitioners were negligent in claiming these deductions. We have, in prior cases, declined to sustain respondent's determination of negligence where the propriety of the deduction at issue was open to question or where the deduction at issue presented substantial issues of law or fact. See, e.g., Ireland v. Commissioner, 89 T.C. 978, 985 (1987); Blackman v. Commissioner, 88 T.C. 677, 683 (1987), *369 affd. without published opinion 867 F.2d 605 (1st Cir. 1988); Kasey v. Commissioner, 54 T.C. 1642, 1651 (1970), affd. 457 F.2d 369 (9th Cir. 1972) (per curiam). In the instant case, a question of fact existed as to whether the expenses at issue were expenses incurred in the furtherance of VDS's trade or business or were actually expenses incurred in the furtherance of Mr. French's trade or business of being an employee of VDS. Thus, despite the fact that we have concluded that petitioners may not deduct these expenses in 1984, we hold that reasonably and ordinarily prudent taxpayers could, based on the facts present here, come to a different (though incorrect) conclusion. On the basis of this record, we conclude that the portion of the underpayment due to the disallowance of the deduction for travel expenses of VDS is not subject to the addition to tax under section 6653(a)(2). Respondent also argues that petitioners were negligent in deducting airplane costs and depreciation allocable to condo-related activity. Petitioners even on the basis of their contention overstated the amount of hours, and thus the amount of costs and depreciation, attributable to condo-related activity *370 by 13.2 hours. They have offered no explanation for this discrepancy. Also some of petitioners' trips such as flying of a neighbor boy to Mammoth Lakes to drive their automobile back were clearly personal. The other trips we have disallowed were, likewise, personal and petitioners have offered no explanation of why these trips were included in claimed travel to manage their condo. We hold that petitioners were negligent in deducting expenses for condo-related trips in excess of the amounts we have held to be deductible. Respondent further argues that petitioners were negligent in deducting airplane costs and depreciation allocable to maintenance and training as expenses of a purported consulting business which produced only a small amount of income. He also argues that petitioners were negligent in deducting airplane costs and depreciation in connection with an apartment building which was located in San Jose, the city in which petitioners resided. Petitioners have not answered these arguments and have not otherwise offered an explanation for these deductions. Therefore, we sustain respondent. Neither party has discussed whether the underpayment of tax due to items conceded by *371 petitioners is subject to the addition under section 6653(a)(2) and, therefore, since petitioners have the burden of proof on the section 6653(a)(2) issue, we hold such underpayments to be due to negligence. The final issue for decision is whether petitioners are liable for an addition to tax under section 6661. If a taxpayer substantially understates his income tax liability, section 6661 provides that an addition to tax of 25 percent of the amount of any underpayment attributable to such understatement of income tax will be imposed. Section 6661(a). Section 6661(c) grants authority to the Secretary to waive all or any part of the addition to tax under section 6661 if the taxpayer shows that there was reasonable cause for the understatement (or part thereof) and the taxpayer acted in good faith. In his notice of deficiency, respondent determined that petitioners were liable for the section 6661 addition to tax with respect to that portion of petitioners' understatement and underpayment attributable to the airplane expenses which petitioners allocated to the purported consulting business, the condo, and the commercial real estate, and certain adjustments disposed of by agreement *372 of the parties, but not with respect to that portion allocated to VDS-related activities. Petitioners in their petition alleged error in respondent's determination of an addition to tax under section 6661 and respondent denied that he committed error with respect to this determination. Petitioners argue that respondent should waive the addition to tax under the authority of section 6661(c). However, except with respect to the expenses which we have determined are properly allocable to condo business related activity, petitioners have made no showing that they acted in good faith or that there was reasonable cause for their understatement. Therefore, we sustain respondent's determination as set forth in the notice of deficiency that section 6661 is applicable to the portion of the underpayment determined by respondent to be subject to the section 6661 addition, except to the extent we have allowed a deduction to petitioners for travel to the condo or agreed adjustments of items not in issue reduce petitioners' underpayment of tax. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Thus, the instant case is clearly distinguishable from Rev. Rul. 70-558, 1970-2 C.B. 35↩, which petitioners cite on brief, because there the employee was not entitled to be reimbursed for his expenses.
3. Sartor v. Commissioner, T.C. Memo. 1984-274; Sherman v. Commissioner, T.C. Memo. 1982-582; Knudtson v. Commissioner, T.C. Memo. 1980-455↩.
4. Sec. 6653(a) provided: (a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME, GIFT, OR WINDFALL PROFIT TAXES. -- (1) IN GENERAL. -- If any part of any underpayment (as defined in subsection (c)(1)) * * * is due to negligence or intentional disregard of the rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. (2) ADDITIONAL AMOUNT FOR PORTION ATTRIBUTABLE TO NEGLIGENCE, ETC. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to negligence or intentional disregard referred to in paragraph (1), and (B) for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).↩