DAVID W. MARSHALL AND MARGARET COLE MARSHALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marshall v. Commissioner
Docket No. 17454-89
United States Tax Court
T.C. Memo 1992-65; 1992 Tax Ct. Memo LEXIS 70; 63 T.C.M. (CCH) 1976; T.C.M. (RIA) 92065; February 3, 1992, Filed *70 Decisions will be entered under Rule 155. Leonard Leighton, for the petitioners. Derek B. Matta, for the respondent. PATE
PATE
MEMORANDUM FINDINGS OF FACTS AND OPINION PATE, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income taxes of $ 2,851, $ 6,194, and $ 2,070, for the years 1984, 1985, and 1986, respectively. After concessions by both parties, the only issue for our decision is whether petitioner, David W. Marshall, is entitled to deduct, as a trade or business expense, the cost of using his private airplane in performing his duties as an officer in the United States Air Force. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The Stipulation of Facts and attached *71 exhibits are incorporated herein by this reference. David W. Marshall (hereinafter petitioner) and Margaret Cole Marshall (hereinafter Mrs. Marshall) are husband and wife and filed joint returns for 1984, 1985, and 1986. They resided in San Antonio, Texas, at the time they filed their petition. Petitioner has been in the United States Air Force (hereinafter Air Force) for 25 years. During the years in issue he was a Lieutenant Colonel and Director of the AeroMedical/Casualty System Program Office (hereinafter ACS) at Brooks Air Force Base. As the program's Director, he was charged with developing equipment to be used to protect soldiers, airmen, and medical personnel, from the effects of chemical warfare. Specifically, petitioner was responsible for the research and development of, and later the production of, new products for decontamination, treatment, and evacuation of military personnel exposed to chemical warfare, and for the mass evacuation of the injured back to the United States. Because the Air Force had no inventory of equipment for this purpose at the time he was appointed, petitioner realized that he had to proceed with considerable urgency. The program had an *72 annual budget of approximately $ 10 million dollars for research and development, and a $ 50 million dollar budget for production of the equipment. Petitioner was responsible for finding qualified contractors to aid in the development of such equipment and technology. Because the concepts introduced by the program were so new, civilian contractors were not aware of the Air Force's requirements. As a result, petitioner had to seek out companies that were qualified and interest them in the program. In addition, petitioner was required to remain in contact with a number of Air Force commanders to keep them abreast of progress and problems in the program. To accomplish this, petitioner traveled to meet with both Air Force personnel and civilian contractors. Petitioner started flying about 30 years ago. He holds an airline transport pilot license and instrument rating for all weather flying. During the years in issue, he owned a 1965 Piper Twin Comanche equipped for all weather flying. He used this airplane on many of his trips for the Air Force; during 1984 he made eleven business trips for the Air Force, using his airplane for eight of them; during 1985 he made a total of fourteen *73 trips, using his airplane for eight of those; and during 1986 he made a total of eleven trips, using his private airplane for two of them. [2] Sometimes, he carried other Air Force personnel. Petitioner did not conduct any personal business while on those trips, although on one trip to California he extended his stay for a short vacation. Petitioner maintained a log and submitted expense vouchers to the Air Force for each trip. He was reimbursed by the Air Force at the rate of sixteen cents per mile, until July 1, 1986, when the reimbursement rate was raised to forty five cents per mile. Petitioner claimed a deduction for the amount that the business portion of his actual expenses and depreciation exceeded the amount of his reimbursements. These deductions totaled $ 9,295, $ 13,682, and $ 1,836, in 1984, 1985, and 1986, respectively. The business portion of depreciation included therein was $ 5,437, *74 $ 6,999, and $ 766, respectively. The parties have stipulated that petitioner has substantiated all of the amounts he deducted. As Director of ACS, petitioner was not required by the Air Force to own his own airplane or to fly other than by commercial means. However, on all of the trips, the use of his airplane was authorized by the Air Force and most of his travel vouchers acknowledged that, under the circumstances, "Travel by privately owned aircraft has been determined as more advantageous to the government". Petitioner could have fulfilled his duties as Director of ACS without the use of a private airplane, but chose to fly his own airplane primarily for two reasons. First, it enabled him to land directly at the military airfields that were his ultimate destinations rather than to the airports which the commercial air carriers used. In addition, the use of his own airplane afforded petitioner flexibility; most of the conferences he attended were indefinite in length and such use allowed him to depart promptly upon their termination. This resulted in considerable time savings, especially when meetings ran late and the use of his airplane enabled petitioner to return that *75 same night in order to report for duty at his office the next morning. In some instances, the use of commercial air carriers would have required petitioner to remain out-of-town overnight, precluding him from attending at least some of the meetings and appointments scheduled for the next day. OPINION Section 162 regulates the deductibility of all ordinary and necessary expenses paid or incurred by an employee during a taxable year in which the employee carries on a trade or business. To secure a deduction under this provision the employee must demonstrate that the expenditure was incurred in his trade or business, was an ordinary and necessary expenditure, and that he could not be fully reimbursed by his employer. Flower v. Commissioner, 61 T.C. 140, 154-155 (1973), affd. without published opinion 505 F.2d 1302 (5th Cir. 1974); Fountain v. Commissioner, 59 T.C. 696 (1973); Westerman v. Commissioner, 55 T.C. 478, 482 (1970); Rink v. Commissioner, 51 T.C. 746, 751 (1969); Koree v. Commissioner, 40 T.C. 961, 965-966 (1963); Stolk v. Commissioner, 40 T.C. 345, 356-359 (1963), *76 affd. 326 F.2d 760 (2d Cir. 1964). Recently, we considered the question of whether an employee can deduct the excess of the costs he incurred in using his private airplane for business over the amount of reimbursement received. Noyce v. Commissioner, 97 T.C.     (December 16, 1991). In that case, we analyzed the question as follows: we must decide if the expenses are ordinary and necessary expenses of petitioner's employment. An expense is necessary if it is appropriate and helpful in carrying on the trade or business. Heineman v. Commissioner, 82 T.C. 538, 543 (1984) (citing Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Welch v. Helvering, 290 U.S. [111, 113 (1933)] * * *. An expense is ordinary when the paying thereof is the common and accepted practice in light of the time and place and circumstance. Welch v. Helvering, supra at 113-114. [Slip. opinion at page 25.]
Therefore, to allow petitioner a deduction for the cost of operating his private airplane, we must first find that petitioner's use of his airplane was "appropriate" and "helpful". Under the circumstances of this case, there *77 is little doubt that the use of his airplane was appropriate and helpful to petitioner in the performance of his duties. It provided him with direct access to his destinations. In this respect, on many occasions, petitioner was able to arrive at his destination on time; whereas, had he used a commercial flight, he may not have been able to do so. Further, instead of having to wait for a commercial flight the next day, petitioner's direct access frequently enabled him to leave promptly after completing his assignment and report to work at his home base the next morning. Secondly, we must find that such expenses were "ordinary," that is, a common or accepted practice. In this day and age, there is no doubt that the use of private airplanes by executives in charge of large projects is a common practice. The popularity of their use is reflected by the number of cases in which the expenses incurred in the use of a private airplane arises. See, e.g., French v. Commissioner, T.C. Memo. 1990-314; Plante v. Commissioner, T.C. Memo. 1987-355; Sartor v. Commissioner, T.C. Memo. 1984-274; Sherman v. Commissioner, T.C. Memo. 1982-582. *78 Finally, we must find that such use was reasonable in relation to its purpose. In this regard, in Noyce v. Commissioner, supra, we held that deductions for depreciation are not taken into account in meeting this criterion. Excluding the depreciation deduction, petitioner's expenses amount to $ 3,858, $ 6,683, and $ 1,070 for 1984, 1985, and 1986, respectively. Petitioner was charged by the Air Force to supply new equipment urgently needed because it was not merely replacement equipment, but equipment needed to protect soldiers and medical personnel from the effects of chemical warfare, a serious threat in recent years. He was empowered to expend $ 10 million dollars per year in research costs alone. To expend the money wisely and productively, petitioner decided that he needed the flexibility the use of his private airplane afforded him to maintain, on an expeditious basis, face-to-face contact with the persons he worked with to achieve the goals of the program. Although the Air Force regulations precluded reimbursing him for his total costs, when we compare the excess costs he incurred with the responsibilities he had to bear, we find them "reasonable". Nevertheless, *79 respondent points to the fact that the Air Force did not require the use of his airplane and argues that, therefore, the expense he incurred in excess of his reimbursement were not necessary to petitioner's business of being an employee of the Air Force. Respondent cites Noland v. Commissioner, 269 F.2d 108 (4th Cir. 1959), affg. T.C. Memo. 1958-60, in support of this argument. We find Noland distinguishable. In Noland, the taxpayer was an executive running six corporations. He personally paid for a Christmas party for employees, paid dues to various clubs, and made a donation to promote industrial development in his area. He deducted these expenditures as ordinary and necessary business expenses. In finding that these expenses were not "necessary" the Court reasoned that ( Noland v. Commissioner, 269 F.2d at 113): When the corporation, reimbursing its officers and employees for direct expense incurred in furthering its business, does not reimburse an officer for a particular expense, that expense prima facie is personal, either because it was voluntarily assumed or because it did not arise directly out of the *80 exigencies of the business of the corporation.
In this case, however, there is no question that petitioner's expenses arose from the "exigencies of the business". Each of petitioner's trips was approved and reimbursement authorized by the Air Force prior to his taking each trip. It is only because the rate of reimbursement was too low to cover petitioner's total costs that we have a dispute here. In Revenue Ruling 70-558, 1970-2 C.B. 35 (cited in Noyce v. Commissioner, supra), the issue under consideration was whether the taxpayer, an employee of the Federal Government, could deduct the excess cost of using his privately owned airplane on his official business trips. In that ruling, respondent stated that: During 1969 the taxpayer was required to travel extensively in connection with his employment. Although he was not required to use his privately owned airplane for business travel, due to the urgency of his trips he was permitted to do so. He was issued overall travel authorizations which provided authority for travel by "private owned auto or aircraft" among other possible means of transportation. The taxpayer was reimbursed for *81 his travel at a standard rate based on the total miles traveled on official business. The taxpayer properly substantiated all the expenses incurred in operating the airplane on the business trips. Held, the travel expenses incurred by the taxpayer in excess of his reimbursements are deductible as ordinary and necessary business expenses. * * *. Such expenses include depreciation on the airplane to the extent properly allocable to business use. [1970-2 C.B. 35.]
We can discern no meaningful distinction between petitioner's situation and the facts in Revenue Ruling 70-558. Respondent next argues that petitioner's failure to seek reimbursement of actual expenses made his excess costs not "necessary" within the meaning of section 162. However, in making this argument, respondent assumes that the "actual expenses" authorized to be reimbursed by the Air Force would have exceeded the amount of the mileage reimbursement. That the "actual expenses" authorized to be reimbursed covered only out-of-pocket costs and did not cover a major portion of the expenses petitioner actually incurred, such as repairs, insurance, *82 maintenance and hangar fees, casts doubt on the validity of respondent's assumption. Moreover, although not entirely clear, petitioner's Federal income tax returns for 1984, 1985, and 1986 indicate that respondent's assumption is incorrect. It appears that the business portion of petitioner's out-of-pocket costs were less than the amount of reimbursement he received from the Air Force. Based on the facts in this record, we conclude that the amount petitioner expended to use his private airplane in the performance of his duties as Director of ACS was an ordinary and necessary business expense he incurred as an officer in the Air Force. Accordingly, he is entitled to deduct the excess of those costs over the amount of his reimbursement. Because of concessions by both parties, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. When petitioner did not use his own plane, he took regularly scheduled flights with commercial air carriers.↩