ROBERT MATLOCK, A.K.A. R.D. MATLOCK AND LYDIA MATLOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Matlock
Docket No. 2285-90
United States Tax Court
T.C. Memo 1992-324; 1992 Tax Ct. Memo LEXIS 349; 63 T.C.M. (CCH) 3108; June 8, 1992, Filed *349 Decision will be entered under Rule 155. Robert Matlock, pro se. Mark E. Menacker, for respondent. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651
6653(a)(1)
6653(a)(2)
6661
1984
$ 7,192
--
$ 360
[1]
$ 1,798
1985
7,842
$ 3
392
[2]
1,961
Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)(A)
6653(a)(1)(B)
6661
1986
$ 6,328
$ 316
[3]
$ 1,582
After setting forth our findings of fact, we will deal with (I) certain evidentiary matters. We will then address the threshold issue of (II)(A) whether Robert Matlock (petitioner) was engaged in the activity of selling solar heating units for profit. If he was so engaged, we also must decide: (B) Whether any expenses deducted by petitioners on Schedule C of their 1984 income tax return were nondeductible startup expenses, (C) whether two solar energy units and *350 a computer petitioners purchased were depreciable property, (D) whether petitioners are entitled to the general business credit of section 38, [1] and (E) whether petitioners have adequately substantiated Schedule C deductions claimed in each of the tax years in issue. We also must decide (III) whether petitioners are entitled to a residential energy credit under section 23 for 1985, (IV)(A) if and to the extent petitioners' Federal income tax returns understated their taxable income, whether the understatements were due to negligence or intentional disregard of rules or regulations, and (B) whether petitioners substantially understated their income tax liabilities without substantial authority for claiming deductions and credits on their returns. FINDINGS OF FACT Petitioners are a married couple who filed joint Federal income tax returns *351 for the taxable years 1984, 1985, and 1986. When petitioners filed their petition, they resided in Lynwood, California. Petitioner earned wages of $ 31,823 in 1984, $ 37,618 in 1985, and $ 37,513 in 1986, while working full time as an electronics engineer at Tylan Corp. In September 1986, he stopped working at Tylan to devote more time and attention to the activities at issue in this case. During 1984-86, Mrs. Matlock worked as a clerk and traffic officer for the City of Los Angeles. She earned wages of $ 23,210 in 1984, $ 27,332 in 1985, and $ 28,506 in 1986. Petitioners' income tax returns in the years in issue were prepared by Lee Toney, a.k.a. Tony Lee. On petitioners' 1984 return, Toney represented that he was "an unenrolled return preparer pursuant to section 10.7(a)(7) of Treasury Department Circular No. 230." Toney promoted the sale of residential solar energy units through Solar Innovations, the wholly owned corporation that he had organized for that purpose in 1983. Toney's main sales method was to organize seminars at which he made questionable representations to prospective customers about the business and income tax benefits of the solar units. With respect to *352 the business benefits, Toney encouraged buyers of units to become "salesmen" for Solar Innovations. Toney told seminar attendees they would receive a $ 400 commission when they referred a buyer to the company and the buyer obtained financing, and that a salesman could earn $ 4,800 per month in commissions. Toney claimed one salesman had made $ 50,000 in a year. Each buyer who became a salesperson for Solar Innovations was "required" by contract, for "demonstration purposes", to install a solar energy unit in his or her home. Toney also told those interested in becoming salespeople for Solar Innovations that they would be required to purchase a solar unit. Toney said there were two business reasons for this requirement. First, it would allow the salesperson to demonstrate the product under actual operating conditions. Second, it would enhance the salesperson's credibility by showing that he or she believed in the product and would have something to lose if it did not work. With respect to the tax benefits, Toney told seminar attendees they could receive a residential energy credit on their Federal and California income tax returns, which would cover something less than one-half *353 the cost of a unit. He also told them they would be entitled to depreciate the remaining cost as incurred in their business of selling solar energy units and to claim business-related deductions and credits. Each solar energy unit sold for $ 15,000. Solar Innovations bought the units for $ 6,995 each. Solar Innovations sold at least 150 units to its "salesmen", generating gross profits on sales of more than $ 1.2 million during 1983-1985. In May 1987, Toney entered a plea of no contest to charges of filing a false California income tax return. In July 1991, he was convicted after a jury trial in the United States District Court for the Central District of California on seven counts of willfully aiding or assisting in the preparation of false Federal income tax returns, in violation of section 7206(2). The Federal indictment alleged that Federal income tax returns prepared by Toney falsely claimed "deductions for losses related to a solar sales business" and falsely claimed business energy investment tax credits and residential energy credits. Toney has been sentenced to 72 months in prison, suspended on condition that he serve 18 months in a community corrections center, and *354 60 months of probation. He has appealed his sentence. Petitioners attended Solar Innovations seminars in 1983 and 1984. Petitioner began actively selling solar units on February 7, 1984. On May 16, 1984, petitioner paid part of the cost of hiring a telemarketing firm. The telemarketing firm would locate prospective customers for petitioner and other Solar Innovations salespeople, leaving petitioner free to work full time during the day and visit prospective customers at night. On November 15, 1984, petitioners bought a passive solar water heating system for their home in Carson, California, through Solar Innovations for $ 7,295. A passive system has virtually no moving parts. Although the record does not show why petitioners paid less than one-half the customary purchase price for this solar unit, petitioner's purchase contract did provide that Solar Innovations would help petitioner start a business selling Solar Innovations products. On December 24, 1984, petitioner applied for a California home improvement license. While the license application was pending, petitioner could legally engage in the business of selling solar units. Prior to submitting the application, petitioner *355 could not have sold solar units legally unless he had associated with a licensed home improvement contractor, such as Solar Innovations, which he did do. There is no evidence that petitioner ever obtained his own home improvement license. In 1985, petitioners bought a house in Lynwood, California, which became their principal residence, and began to rent out their former residence in Carson. On November 7, 1985, petitioners bought an active solar energy collection system known as a Rope-a-Ray for their Lynwood home from Solar Innovations for $ 17,700. The Rope-a-Ray had moving parts, and was designed not only to heat water, but also to heat the entire house. Petitioners used their solar systems in two ways. The solar units provided hot water and, in the case of the Lynwood home, space heat, for petitioners' residences. In addition, petitioners occasionally demonstrated the operation of their solar units to prospective customers. These demonstrations took an average of less than 1 hour per day. The record does not disclose the proportional use of the two residences for demonstrations. The demonstrations permitted prospective customers to see an installed unit in operation *356 in a residence. However, during a demonstration, the solar unit continued to provide the residence with hot water and space heating. Petitioner also invested in a solar demonstration truck. Rope-a-Ray solar panels were mounted on the truck. An associate of Solar Innovations drove the truck to various sites in Southern California to demonstrate the benefits of solar energy. Petitioner was entitled to $ 250 each time the truck generated a sale. Petitioner is an intelligent, capable, and energetic individual who made a bona fide, focused effort to make money promoting the sale of solar units. He also acquired some technical expertise in solar unit operations and occasionally made repairs to units installed by Solar Innovations. Petitioner had 75 solar unit business appointments during 1984. Beginning February 7, 1984, through the date of the installation of petitioners' first solar unit, November 22, 1984, petitioner had 59 such appointments, for an average of 1 appointment every 4.9 days. Following petitioners' purchase of their first solar unit, petitioner had 16 appointments in the remainder of 1984, for an average of 1 appointment every 2.4 days. Petitioners reported $ *357 400 in gross income and a net loss of $ 4,763 from solar unit sales activities in 1984. In 1985, petitioner had 76 appointments, or 1 appointment every 4.8 days, including 18 sales seminars in his home that he expected as many as 174 people to attend. The number who actually attended is not recorded. Petitioners provided food and beverages to seminar attendees. Petitioners reported gross income of $ 1,500 and a net loss of $ 12,538 from solar unit sales activities in 1985. Between January 1 and September 27, 1986, petitioner had 26 appointments, or 1 every 10.6 days. Prior to September 1986, petitioner was offered the choice of either accepting a promotion at Tylan or being laid off. Petitioner chose to be laid off and to devote his full business time to Solar Innovations-related solar unit sales activities. On September 1, 1986, petitioner began subletting office space from Coast to Coast Marketing, a subsidiary of Solar Innovations organized just prior to the sublease. Petitioner then worked full time selling products for Coast to Coast. Petitioner was issued 10 percent of the stock of Coast to Coast as compensation for his future efforts. The stock was worthless when *358 issued, but could have become valuable if Coast to Coast became profitable. Coast to Coast offered a wider variety of environmental control products than Solar Innovations because the section 23 residential energy credit was not available for solar units installed after 1985. From September 28, 1986, through yearend, petitioner had 84 appointments, or an average of 1 every 1.1 days, including weekends. On many days there was more than one appointment, and on October 29, 1986, petitioner had 5 appointments. Petitioner gave 11 seminars at his home, inviting a total of 126 people to 8 of them (the other 3 lack a record). Petitioner reported $ 3,500 in gross income and a net loss of $ 19,235 from the sales of environmental control systems in 1986. ULTIMATE FINDINGS OF FACT Petitioner was engaged in the activity of solar energy sales for profit during 1984 and 1985. In 1986, he was engaged in the activity of selling for profit environmental control systems that incorporated solar and other technologies. Petitioners are not entitled to any general business credits in any of the above tax years. Petitioners are entitled to depreciation deductions in 1985 and 1986 to the extent *359 provided in our opinion, infra p. 18. Petitioners substantiated and are entitled to the following deductions for 1984: Office expenses
$ 217.00
Supplies
445.51
Automobile expenses
384.37
Interest
231.00
Telephone
50.00
Total
$ 1,327.88
Petitioners substantiated and are entitled to the following deductions for 1985: Office expenses
$ 100.00
Interest
386.00
Supplies
100.00
Food
486.00
Entertainment
245.86
Telephone
100.00
Total
$ 1,417.86
Petitioners substantiated and are entitled to the following deductions for 1986: Rent
$ 1,552.00
Telephone
220.00
Food
378.00
Total
$ 2,150.00
Petitioners also are entitled to a residential energy credit of $ 4,000 for 1985. OPINION I. Evidentiary Matters
A. Hearsay Objections Respondent made hearsay objections to calendars offered by petitioner for the truth of matters stated therein. The calendars for 1985 and 1986 were kept contemporaneously with the events described in them. Those calendars are interleaved with checks and receipts to substantiate various calendar entries. On the other hand, petitioner did not make entries in the 1984 calendar contemporaneously with the events described *360 in the calendar. Although he did keep a contemporaneous 1984 calendar, it was lost in storage. Rather, he compiled, in contemplation of this proceeding, other notes that he had written contemporaneously with the events in question and transcribed those notes to the 1984 calendar. Respondent objects that the calendars are hearsay not within any exception of rule 803 of the Federal Rules of Evidence.
We disagree. The 1985 and 1986 calendars come within an exception to the hearsay rule, and although the 1984 calendar is double hearsay, the 1984 calendar is also admissible because there are exceptions under the rules for both levels of hearsay. Fed. R. Evid. 805; Weinstein & Berger, Weinstein's Evidence, par. 1006[03], at 1006-6 (1991 & Supp. 1992). The 1984 notes petitioner kept, as well as the 1985 and 1986 calendars, are hearsay declarations, but they were kept in the course of a regularly conducted activity, and it was petitioner's regular practice to make such notes and calendar entries. Thus, they all come within the exception for records of regularly conducted activity. Fed. R. Evid. 803(6). Therefore, the 1985 and 1986 calendars are admissible. The summary of the 1984 *361 notes contained in the 1984 calendar is also hearsay. Inasmuch as the summary was not made in the ordinary course of business, but rather in contemplation of litigation, the exception of rule of 803(6) of the Federal Rules of Evidence does not apply. However, the summary is admissible under rule 1006 of the Federal Rules of Evidence: The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court. The 1984 calendar lists 75 sales appointments or seminars and numerous payments allegedly made in the course of petitioner's solar sales activities. We find that petitioner's notes were voluminous and could not have been conveniently examined by the Court. Respondent did not object on the ground that the originals, i.e., petitioner's notes, were not made available at a reasonable time and place. We thus deem this objection waived. The 1984 calendar is admissible, although the circumstances *362 of its preparation reduce the weight we attach to its contents. B. Toney's Credibility and Conduct Toney was petitioners' only witness, other than petitioner. In our view, Toney's status as petitioners' return preparer and his convictions for tax crimes in preparing the returns of others to whom he sold solar energy units significantly undermine his credibility. Fed. R. Evid. 609. Toney's testimony was largely conclusory and unhelpful. We also regard Toney's testimony as self-serving, to the extent a result favorable to petitioners in this case might have reduced the severity of Toney's sentence in his criminal case. His factual claims were not credible, but did give us insight into his misleading sales techniques. Toney testified that the solar units were sold "for demonstration purposes only", although he lacked personal knowledge of how the units were actually used. Confronted with overwhelming evidence that every Solar Innovations salesperson lost money, Toney continued to profess that it was easy to make money as a Solar Innovations salesman, and pointed to a single unverified example as proof. The fact is that Toney used people such as petitioner for his own ends; *363 we view Toney's testimony as intended to obscure that fact. In conclusion, we view with great skepticism Toney's testimony about the ability of salespeople to make a living selling solar units on behalf of Solar Innovations, although we believe his testimony about the content of his own solar sales pitch, which we believe intentionally or recklessly misled purchasers, including petitioner. However, we have not held petitioner's association with Toney against petitioner. II. Trade or Business Issues
A. Profit Motive Under section 183, a taxpayer's deductions are disallowed to the extent they exceed gross income from an activity not engaged in for profit. All petitioner is required to prove to avoid disallowance is that petitioner was engaged in an activity for profit. Petitioner need not prove the other elements of trade or business status. An activity is engaged in for profit when the taxpayer engages in the activity with "the actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation of profit need not be reasonable, *364 but the taxpayer must have entered into or continued the activity with the objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.
Whether the taxpayer had a profit objective is a factual issue that requires us to weigh all the surrounding facts and circumstances, giving greater weight to objective facts than the taxpayer's own, potentially self-serving, statements of intent. Sec. 1.183-2(a) and (b), Income Tax Regs.
A nonexclusive list of the factors for consideration appears in section 1.183-2(b), Income Tax Regs. The factors listed and our findings with respect to them are: (1) The manner in which the taxpayer carries on the activity. Petitioner regularly, and more or less continuously, tried to sell Solar Innovations products to earn sales commissions. Petitioner's activities were not sporadic and were not for the purpose of amusement. Petitioner complied with California law by applying for a home improvement license, although he apparently never received such a license. (2) The expertise of the taxpayer or his advisors. Petitioner is a trained engineer who had some expertise with solar energy equipment. Petitioner occasionally solved problems with *365 installations performed by Solar Innovations. However, there is no evidence that petitioner had formal training with solar units and no evidence that petitioner consulted with knowledgeable advisors, other than Toney, before entering into business. (3) The time and effort expended by the taxpayer in carrying on the activity. Petitioner spent substantial time and effort on his sales activities during the taxable years in issue. Petitioner paid a portion of the cost of hiring a telemarketing service, from which he received leads. Petitioner eventually devoted all his working hours to the business. (4) The expectation that the assets used in the activity may appreciate in value. Petitioner purchased two residential solar units that were used in connection with the business. Petitioner reasonably could have expected the value of the residences to increase as a result. Petitioner also received stock that could have increased in value if his selling efforts had been successful. (5) The success of the taxpayer in carrying on other similar or dissimilar activities. Petitioner had not, to our knowledge, engaged in similar activities. Petitioner had a career as an electronics *366 engineer, a dissimilar activity. (6) The taxpayer's history of income or losses with respect to the activity. Petitioner never reported a net profit from his solar activities, and his reported losses substantially diminished his reported taxable income. However, as result of our disallowance of deductions infra, petitioner did have net income from solar sales in 1985 and 1986. We consider especially important the fact that petitioner turned down a promotion, quit his job at Tylan, and devoted his full-time energies to the solar business when he recognized that a part-time effort was not sufficient to turn a profit. Engdahl v. Commissioner, 72 T.C. 659, 669 (1979). (7) The amount of occasional profits, if any, which are earned. Petitioner never reported profits. Under our decision in this case, petitioner had net income of $ 82.14 in 1985 and $ 1,350 in 1986. Because we disallow the bulk of petitioner's claimed business expense deductions for lack of substantiation, including the failure in some instances to satisfy the recordkeeping requirements of section 274, it seems likely that petitioner's expenses actually did exceed gross income, and *367 therefore that petitioner never had an economic profit from his solar sales activities during any of the taxable years in issue. (8) The financial status of the taxpayer. Petitioner was an unsophisticated investor with a middle-class income. (9) Whether elements of personal pleasure or recreation are involved. The activities necessary to sell solar units -- making telephone calls, visiting prospective purchasers, etc. -- did not have the elements of personal pleasure common to hobbies. To be sure, petitioners received the benefit of solar heating in their homes, and they apparently ate numerous business meals and took at least one business trip. But these benefits were not, in our view, a major motivation for petitioner to carry on his activities, and not a source of personal gratification. Weighing all these factors, we find that petitioner made efforts to sell the Solar Innovations products with an actual and honest objective of making a profit. Petitioner's business was not a sham and was not without economic substance. We need not and do not reach the issue of whether, in delivering sales talks, petitioner or Toney misled others about whether they would qualify *368 for trade or business treatment for tax purposes. We are aware of our Memorandum Opinion in Todd v. Commissioner, T.C. Memo. 1992-50, and various Summary Opinions of this Court in which other Solar Innovations customers were petitioners. We found, on the facts of those cases, that other taxpayers who bought solar units from Toney and attempted to become "salesmen" never engaged in an activity with an actual and honest objective to make a profit and were not entitled to claim any business expense deductions or credits on income tax returns Toney prepared for them. But every case stands on its own facts. Even though Toney may have defrauded or imposed upon petitioner in a variety of ways, we have found that, during the taxable years before us, petitioner did engage in the activity of selling solar energy units or environmental control systems with the objective of making a profit. B. Date of Startup Respondent asserts that petitioner could not have been in the business of selling solar units until he filed his application for a home improvement license on December 26, 1984. Therefore, respondent argues, petitioner's expenses incurred prior to that date *369 were startup expenses, nondeductible under section 195. We disagree. Petitioner's failure to obtain his own license merely required him to associate with someone who did have such a license. Petitioner associated with Toney and Solar Innovations, and at least one of them had a home improvement license. We are convinced that petitioner began actively selling solar energy systems shortly after he attended Toney's seminars. Petitioner's earliest recorded selling effort was February 7, 1984. We find that petitioner had completed any startup phase of his business by that date. C. Depreciation 1. Solar Units Petitioners claimed deductions for depreciation of their solar units on Schedule C of their 1985 and 1986 returns. Respondent disallowed those deductions. In our findings of fact, supra p. 6, we described petitioners' use of the solar units. Section 167 provides a deduction for depreciation of property used in a trade or business or for the production of income, while section 262 precludes any deduction for personal, family, or living expenditures. On this record, it appears that the solar units were used almost exclusively to provide more comfortable living conditions *370 for petitioners. Even when the solar units were being used for sales purposes, they continued to provide this personal benefit. Although owning a solar unit may have been helpful in selling solar units, we conclude that the solar units owned by petitioners were not depreciable property. Even an expenditure that is necessary for the success of a business is a nondeductible personal expenditure when the item is of an overwhelmingly personal character. In denying a deduction for maintenance of a hearing aid, we stated: Even if it is used in petitioner's business, in fact even if it is necessary for his successful law practice, the device is so personal as to preclude it from being a business expense. A businessman's suit, a saleslady's dress, the accountant's glasses are necessary for their business but the necessity does not overcome the personal nature of these items and make them a deductible business expense. [Bakewell v. Commissioner, 23 T.C. 803, 805 (1955).] See also Commissioner v. Flowers, 326 U.S. 465 (1946) (expenses of commuting to work are nondeductible personal expenditures); Paxman v. Commissioner, 50 T.C. 567 (1968) *371 (recreation consultant denied depreciation of recreation room in family residence beyond allowance permitted by Commissioner), affd. 414 F.2d 265 (10th Cir. 1969); Page v. Commissioner, T.C. Memo. 1970-112 (architect's landscaping of his summer cottage was insufficiently related to his trade or business to entitle him to business deductions); sec. 1.162-5(b)(1), Income Tax Regs. (basic education, though required to enter a particular profession, is either a personal expenditure or an "inseparable aggregate" of personal and capital expenditure and is not deductible). The solar units were used continuously for petitioners' personal benefit. We therefore sustain respondent's disallowance of depreciation deductions relating to their use. On the other hand, there is evidence in the record that the foregoing analysis should not apply to the Carson home because petitioners rented it to third parties. Petitioners' 1985 and 1986 returns include Schedules E listing the Carson home as rental property. Each return claims Schedule E deductions for depreciation. To the extent that the depreciation deductions claimed on Schedule C of those returns were attributable *372 to the Carson property and not already claimed on Schedule E, they are allowable in addition to Schedule E depreciation deductions claimed on the returns. Because Schedule E deductions were not in issue at trial, the record before us is insufficient to make findings of fact on this issue, but we direct the parties to take this matter into account in their Rule 155 computation. 2. Home Computer In addition, petitioners claimed depreciation deductions in 1985 and 1986 attributable to a home computer purchased during 1985 for $ 847.50. Petitioner testified that he used the computer exclusively for business, although not entirely for solar sales. Apparently, he also was programming personal computer software. Petitioner submitted a computer-generated report of solar projects pending during the years in issue. Petitioner kept no records of computer usage. Section 274(d) disallows any deduction relating to business use of certain types of property listed in section 280F(d)(4), including computer equipment, sec. 280F(d)(4)(iv), unless the taxpayer establishes business use of the property by adequate records or other corroborating evidence. The taxpayer must substantiate (A) the *373 amount of the expense, (B) the time and place of the use of the computer, (C) the business purpose of the computer, and (D) the business relationship to the taxpayer of the person using the computer. Petitioner has adequately substantiated elements (A), (C), and (D). Petitioner also has adequately substantiated the place where he used the computer (his home) under (B). However, petitioner did not adequately substantiate the time of his business use of the computer. He submitted no record or log of computer usage. Petitioner submitted one sample of the computer's work product. Without sufficient evidence that the computer was used for business purposes, we uphold respondent's determination, and we sustain respondent's disallowance of petitioners' Schedule C depreciation deductions for the home computer. D. General Business Credit In all 3 years in issue, petitioners claimed a general business credit, consisting of an investment tax credit and (in 1984 and 1985) a business energy credit. Our resolution of the depreciation issue largely resolves the general business credit issue. Petitioners cannot receive a general business credit under section 38 unless the property is *374 eligible for depreciation under section 167. We already have held that the solar units are not eligible for depreciation. A fortiori, the solar units are not eligible for a general business credit. We reach the same result with respect to the Carson house, even though the solar unit there was depreciable as part of a rental property in 1985 and 1986. The solar system was installed at the Carson home in 1984, when it was still petitioners' principal residence, but was converted to income-producing use when petitioners rented out the Carson property. The credits under section 38 are available for the year the property is "placed in service". Property is placed in service when it "is placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity." Sec. 1.46-3(d)(1)(ii), Income Tax Regs. The regulations specifically anticipate the situation before us, where property is converted from personal to income-producing use: The credit allowed by section 38 with respect to any property shall be allowed only for the first taxable year in which *375 such property is placed in service by the taxpayer. The determination of whether property is section 38 property in the hands of the taxpayer shall be made with respect to such first taxable year. Thus, if a taxpayer places property in service in a taxable year and such property does not qualify as section 38 property * * * in such year, no credit * * * shall be allowed to the taxpayer with respect to such property notwithstanding that such property * * * qualifies as section 38 property in a subsequent taxable year. For example, if a taxpayer places property in service in 1963 and uses the property entirely for personal purposes in such year, but in 1964 begins using the property in a trade or business, no credit is allowable to the taxpayer under section 38 with respect to such property. [Sec. 1.46-3(d)(4)(i), Income Tax Regs.] Thus, petitioners are not entitled to any credits under section 38 for their solar units. With regard to the computer, section 274(d) denies any credit relating to "listed property", such as the computer, unless the substantiation requirements are met. We found, supra p. 21, that petitioner had not substantiated the business usage of the computer. *376 We sustain respondent's disallowance of the general business credits. E. Schedule C Deductions 1. Taxable Year 1984 Petitioners reported gross income of $ 400 from solar sales in 1984. They claimed the following deductions: Office expenses. Petitioners claimed $ 217 for office expenses. This amount represents one payment by petitioner to Toney for petitioner's share of the telemarketing expenses, described supra page 5. Petitioner produced a receipt which adequately substantiated this expense. This expense was incurred on May 16, 1984, after the startup phase of petitioner's business. Petitioner's deduction of this expense is allowed. Supplies. Petitioners claimed $ 486 for supplies. Mr. Matlock purchased a carrying case for a videocassette recorder that he took to seminars, as well as sundry office items. Petitioners produced receipts totaling $ 282.64 for these items. Petitioner also produced postal receipts of $ 162.87, which expenses apparently were included in the supplies category. We allow petitioners a deduction of $ 445.51. Travel, entertainment, and meals. Petitioners claimed $ 510 for travel and entertainment. Petitioners conceded *377 at trial that they lacked substantiation for the deduction of these expenses. Petitioners also claimed $ 1,054 for business meals, but produced no documentation to support their claim. We therefore sustain respondent's determination in full. Utilities and telephone. Petitioners claimed $ 682 for utilities and telephone. Petitioners produced no substantiation for the deduction of these expenses. Nonetheless, we have found that petitioner was engaged in an activity for profit, and we believe that the business reasonably required him to use the telephone, so we will make some allowance. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). We allow petitioner $ 50 for telephone expenses. Automobile expenses. Petitioners claimed insurance expense of $ 488 on their Schedule C for 1984. This amount approximated 50 percent of their auto insurance for the year, to account for the purported 50 percent business usage of both family autos. Petitioners failed to offer any documentary evidence of insurance payments. Petitioners claimed $ 720 for approximately one-half of their gas and oil expenditures, for which there was no substantiation. Petitioners *378 claimed $ 439 for repairs and maintenance of two vehicles, or approximately 43 percent of total repair expenditures, and $ 120 for tires and batteries. Petitioners produced receipts showing that these expenses had been paid. Two repairs, totaling $ 295.18, occurred prior to February 7, 1984, and therefore are either nondeductible startup expenses, sec. 195, or personal expenditures. Petitioners were unable to prove the allocation of the cars' business and personal usage. Petitioner never kept a log of business or personal mileage, so his excuse that many of his 1984 records were lost in storage is unavailing. Based on the 1984 calendar, however, we believe some deduction is in order for post-startup auto expenditures. We allow petitioner 1,875 miles of local business usage of automobiles in 1984, or 25 miles for each of the 75 appointments after startup. At the applicable mileage rate of 20.5 cents per mile, Rev. Proc. 84-72, 1984-2 C.B. 735; Rev. Proc. 83-74, 1983-2 C.B. 593, we allow petitioner a deduction of $ 384.37 for automobile expenses. Cohan v. Commissioner, supra.
Petitioners also claimed *379 $ 231 for interest on indebtedness, about one-half the interest on a loan on Mr. Matlock's automobile. Petitioners adequately substantiated this expense. We allow the entire interest expense deduction, but as a personal deduction on Schedule A, rather than as an expense on Schedule C. Miscellaneous expenses. Petitioners claimed $ 216 for miscellaneous expenses. Petitioners introduced a receipt for carpeting for $ 4,296, payable (with 18.15 percent interest) in 36 installments of $ 155.46. Petitioner claimed that he deducted a portion of the expenditure allocable to an alleged home office. Petitioner also presented a receipt for $ 303.36 for a water purifying system installed in the Carson house. Petitioner claimed that he was attempting to sell water purifying systems. These expenditures were for nondeductible capital improvements to petitioner's residence. Sec. 263(a)(1). Although the interest would have been deductible if paid, petitioner presented no evidence that the interest had been paid and was not deducted elsewhere on his return. We therefore sustain respondent's determination in full. 2. Taxable Year 1985 Petitioners reported gross income of $ 1,500 from *380 solar sales in 1985. They claimed the following deductions: Automobile expenses. Petitioners claimed $ 2,438 for automobile expenses, covering both the auto primarily used by Mr. Matlock and the auto primarily used by Mrs. Matlock. Petitioners submitted receipts for auto repairs, maintenance, and gasoline totaling $ 2,693.37. As with 1984, however, petitioners were unable to substantiate the business portion of their auto usage. Beginning with the 1985 taxable year, section 274(d)(4) provides that no deduction is allowable for use of property listed in section 280F(d)(4), including automobiles, sec. 280F(d)(4)(A)(i), unless the taxpayer substantiates by adequate records or corroborative evidence (A) the amount of such expense, (B) the time and place of use, (C) the business purpose, and (D) the business relationship of the taxpayer to the persons using the automobile. We are prohibited from estimating the appropriate deduction under the Cohan rule. Sec. 1.274-5(a), Income Tax Regs. Petitioner was unable to produce any records that show the absolute amount of business usage of the automobiles or the ratio of business to personal use. Thus, petitioner did not comply *381 with section 274(d)(4), and we accordingly sustain respondent's determination. Insurance. Petitioners claimed $ 850 for insurance. Petitioner asserted that the amount covered one-sixth of his homeowner's insurance and some portion of his automobile insurance. Petitioner occasionally used a room in his home as an office. The room accounted for approximately 8.75 percent of the square footage in the house. Petitioner submitted no documentation substantiating this deduction, and did not present sufficient evidence about the extent of the business usage of the room. Section 280A requires that a taxpayer prove that a portion of his home was used exclusively and regularly for business purposes to be entitled to deductions relating to the business use of a home. Petitioner failed so to prove. We therefore sustain respondent's determination in full. Office expenses. Petitioners claimed $ 574 for office expenses. Petitioners' sole documentation is a receipt for $ 4.85. Despite the lack of documentation, we believe some amount was spent on office expenses. We allow a deduction of $ 100. Cohan v. Commissioner, supra.
Other interest. Petitioners *382 claimed $ 386 for "other interest". This is one half of the interest paid on the home improvement loans for the solar units. As discussed supra p. 18, we do not believe that the solar units were property used in an activity for profit, and we therefore find that this interest was not incurred in petitioner's solar sales activities and is not deductible on Schedule C. Nonetheless, respondent concedes that the amount is deductible under section 163 (relating to interest), and we allow such a deduction. We direct the parties in their Rule 155 computation to allocate the interest between petitioners' rental activities and their personal residence. Repairs. Petitioners claimed $ 642 for repairs (in addition to car repairs discussed supra p. 26). These expenditures were for carpeting and curtains for the room in the house petitioner used as an office. These expenditures are not repairs, but rather are nondeductible capital improvements to the property. Sec. 263(a)(1). We therefore sustain respondent's determination in full. Supplies. Petitioners claimed $ 588 for supplies. Petitioner submitted an unitemized receipt in the amount of $ 22.08 as substantiation. *383 Petitioners also submitted canceled checks, payable either to Mrs. Matlock or to cash, totaling $ 1,760. A check for $ 200 to Mrs. Matlock bears the memo "Personal". The other checks have memos such as "supplies and materials" or "business". These checks are insufficient to show that the expenses were incurred in carrying on petitioner's solar sales activities. Inasmuch as the payee was Mrs. Matlock or cash, the money could have just as easily been used for personal expenses as for business expenses. Nonetheless, petitioners clearly spent some amount on supplies, so some deduction is in order. We allow $ 100 as a deduction for supplies. Cohan v. Commissioner, supra.
Entertainment and business meals. Petitioners claimed $ 1,496 for entertainment. Petitioners produced canceled checks totaling $ 1,513.97 as substantiation. The checks were payable to the order of grocery stores. When petitioners held sales seminars at their homes, Mrs. Matlock would purchase food and beverages at the grocery store to provide refreshments for prospective customers. The 1985 calendar states the dates of the various seminars and the number of people expected to attend, *384 but no names of the seminar attendees. Indeed there is no record of how many invitees actually attended. Respondent argues that the substantiation requirements of section 274(d) apply to these expenses, and that petitioners did not meet those requirements. Section 274(d)(2) requires detailed substantiation of business entertainment expenses. The threshold question is whether section 274(d) applies because these expenses were entertainment expenses. [2] The regulations under section 274(a) provide some guidance as to what the Code means by "entertainment": (b) Definitions--(1) Entertainment defined--(i) In general. For the purposes of this section, the term "entertainment" means any activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as entertaining at night clubs, cocktail lounges, theaters, country clubs, golf and athletic clubs, sporting events, and on hunting, fishing, vacation and similar trips, including such activity relating solely to the taxpayer or the taxpayer's family. The term "entertainment" may include an activity, the cost of which is claimed as a business expense by the taxpayer, which satisfies *385 the personal, living, or family needs of any individual, such as providing food and beverages, a hotel suite, or an automobile to a business customer or his family. The term "entertainment" does not include activities which, although satisfying personal, living, or family needs of an individual, are clearly not regarded as constituting entertainment, such as (a) supper money provided by an employer to his employee working overtime, (b) a hotel room maintained by an employer for lodging of his employees while in business travel status, or (c) an automobile used in the active conduct of trade or business even though used for routine personal purposes such as commuting to and from work. On the other hand, the providing of a hotel room or an automobile by an employer to his employee who is on vacation would constitute entertainment of the employee. (ii) Objective test. An objective test shall be used to determine whether an activity is of a type generally considered to constitute entertainment. Thus, if an activity is generally considered to be entertainment, it will constitute entertainment for purposes of this section and section 274(a) regardless of whether the *386 expenditure can also be described otherwise, and even though the expenditure relates to the taxpayer alone. This objective test precludes arguments such as that "entertainment" means only entertainment of others or that an expenditure for entertainment should be characterized as an expenditure for advertising or public relations. However, in applying this test the taxpayer's trade or business shall be considered. Thus, although attending a theatrical performance would generally be considered entertainment, it would not be so considered in the case of a professional theater critic, attending in his professional capacity. Similarly, if a manufacturer of dresses conducts a fashion show to introduce his products to a group of store buyers, the show would not be generally considered to constitute entertainment. However, if an appliance distributor conducts a fashion show for the wives of his retailers, the fashion show would be generally considered to constitute entertainment. [Sec. 1.274-2(b)(1)(i) and (ii), Income Tax Regs; emphasis added.] *387 Our task is to decide whether a solar energy unit sales talk at the salesman's home at which he provides refreshments is an activity that is "generally considered to constitute entertainment." Sec. 1.274-2(b)(1)(ii), Income Tax Regs. We conclude it is not entertainment, especially in light of the regulation's "fashion show for customers" example. Id. Displaying one's own wares to customers, even in an entertaining way, is not entertainment, according to the regulations.[3] The refreshments were provided only as a polite and incidental amenity for prospective customers who listened to petitioner's sales talks about the benefits of solar energy. As we understand the facts, food was not an important part of petitioner's seminars, and did not convert his sales talks into "entertainment". See Pillsbury v. United States, 60 AFTR 2d 87-6003, 86-2 USTC par. 9594 (D. Minn. 1986) (state troopers, required by orders to eat in restaurants so that they could provide a visible police presence, were not subject to sec. 274(d) substantiation requirements), affd. on other grounds 841 F.2d 809 (8th Cir. 1988). *388 We have, in prior decisions on different facts, analyzed grocery store expenditures under section 274, but those cases are distinguishable. In Wedemeyer v. Commissioner, T.C. Memo. 1990-324, we held that "the connection between the grocery receipts and business meetings is too tenuous to constitute adequate substantiation." That is not the case here. In Hefti v. Commissioner, T.C. Memo. 1988-22, provision of "candy, beverages, and light meals to clients during working meetings" was analyzed under section 274, but that decision turned on the taxpayers' "incredible" claim that two-thirds of their grocery expenses were business expenses. Nonetheless, we largely sustain respondent's determination. The records presented were too lacking in substance to convince us that the payments to the grocery stores were entirely for business purposes. We cannot tell what or how much was purchased because there are no itemized receipts. Petitioners' records indicate that they spent between $ 5.80 and $ 18.40 per person per seminar, with an average of $ 8.58 per person. In our experience, this average is more than one would typically spend for refreshments *389 at gatherings of this type. We infer that a large percentage of the groceries was for personal consumption. We note that petitioners did not offer the testimony of Mrs. Matlock, who signed all the checks and appears to have done the shopping. She would have been better able than anyone else to tell us whether any of the groceries were for personal consumption. We can only assume that her testimony would have undercut petitioners' case. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. as to other grounds 162 F.2d 513 (10th Cir. 1947). Nonetheless, petitioner has provided enough evidence to convince us that some deduction is in order. We will allow petitioner to deduct $ 3 per person expected, or $ 486. Cohan v. Commissioner, supra.
Petitioners also claimed $ 1,589 for business meals. Unlike the sales seminars, these meals were in restaurants. A meal in a restaurant is generally considered to be "entertainment", and therefore section 274(d) applies. See, e.g., Didsbury v. Commissioner, T.C. Memo. 1989-1; Silkman v. Commissioner, T.C. Memo. 1988-291; *390 Schloegl v. Commissioner, T.C. Memo. 1986-440. Section 274(d) requires "adequate records or [other] evidence corroborating the taxpayer's own statement" substantiating (A) the amount spent, (B) the time and place of the entertainment, (C) the business purpose of the expense, and (D) the business relationship to the taxpayer of the person entertained. Petitioners submitted receipts totaling $ 283.51 as substantiation. We find that receipts covering $ 245.86 of the business meal expenditures comply with the requirements of section 274(d), and therefore allow a deduction in that amount for business meals. Utilities and telephone. Petitioners claimed $ 854 for utilities and telephone. Petitioner submitted checks written to the order of Pacific Bell, AT&T, Southern California Edison Co., and Southern California Gas Co. totaling $ 1,409.81. Petitioner stated that he estimated his business telephone usage at 70 percent of total usage, so he deducted 70 percent of the amount expended for telephone bills. He also deducted one-sixth of the amount expended for utilities, allocable to his purported home office. Petitioner submitted no evidence, such as a log book, *391 to corroborate his claim that business telephone usage was 70 percent of the total. However, we believe some deduction for telephone usage is in order, and we allow $ 100. Cohan v. Commissioner, supra.[4] In addition, petitioner did not establish the size of his office relative to the rest of the house, the amount of time that the office was used, and whether the office was regularly used exclusively for business purposes. Sec. 280A(c). Petitioner has thus failed to substantiate the business nature of the utility expenses, and therefore respondent's determination is sustained with respect to the utilities. Gifts. Petitioners claimed a deduction of $ 300 for business gifts. Petitioners submitted four checks totaling $ 199.34, payable to K-Mart and Thrifty. Petitioner asserted that these amounts were aggregations *392 of small gifts given to customers to promote business. Petitioner did not establish to whom these gifts were given, or what they were. Section 274(d) requires, regardless of the amount of the gift, that the taxpayer substantiate (A) the amount expended on a gift, (B) the date and description of the gift, (C) the business purpose of the gift, and (D) the business relationship of the donee. Petitioner was unable to establish the amount expended on any gift, the date of any gift, or the description of any gift. We therefore sustain respondent's determination. Miscellaneous expenses. Petitioner claimed a $ 642 deduction for miscellaneous expenses. Petitioner produced receipts for paint totaling $ 277.49. Petitioner did not establish a business purpose for the paint. Petitioner also submitted a log book entry noting an "educational expense" of $ 330.27, and a check for $ 89.50 payable to "Xerox Learning Sys." Petitioner testified that the educational expense was for a "computer speed learning, reading type deal". In our view, a course that teaches students how to read and learn more quickly is generalized education, unrelated to petitioner's solar activities. Sec. 1.162-5(b)(1), *393 Income Tax Regs. We sustain respondent's determination. 3. Taxable Year 1986 Petitioners reported gross income of $ 3,500 from solar sales in 1986. They claimed the following deductions: Bank charges. Petitioners claimed $ 75 in bank charges, but provided no substantiation. Petitioner asserted the charges were for bounced checks written for business purposes, but we view this uncorroborated statement with skepticism. We sustain respondent's determination. Interest. Petitioners claimed $ 3,153 in mortgage interest on Schedule C, which respondent disallowed. Petitioners also claimed interest as follows: Schedule A
$ 9,700
Schedule E
10,432
Total
$ 20,132
Petitioner submitted information statements from various lenders showing that petitioners paid $ 17,303.95 in interest during 1986. Petitioner has failed to show that he paid interest in excess of the amount allowed by respondent. We therefore sustain respondent's determination. Legal expenses. Petitioners deducted $ 650 for legal expenses. Petitioner claimed this amount was paid in cash to an attorney representing Coast to Coast Marketing after petitioner became a stockholder in Coast to Coast. *394 We find that petitioner did not adequately substantiate this payment. Even if he had, however, petitioner did not make the payment in carrying on his activity for profit, but rather on behalf of Coast to Coast, a separate taxable entity. Such payments are not deductible. Leamy v. Commissioner, 85 T.C. 798, 808-809 (1985). We therefore sustain respondent's determination. Office expenses. Petitioners deducted $ 1,549 for office expenses. Petitioner produced receipts from printing shops for business forms and business cards totaling $ 1,476.10. However, petitioner also introduced two receipts indicating payments of $ 700 from Coast to Coast Marketing to a print shop, and a check drawn on the account of Coast to Coast Marketing for $ 933.08 payable to the same print shop. We believe that Coast to Coast, rather than petitioner, paid the $ 1,476.10 in expenses, and therefore petitioner is not entitled to the deduction. We sustain respondent's determination. Rent on business property. Petitioners claimed a deduction of $ 1,550 for rental of business property. Petitioner entered into an agreement to sublet office space on a month-to-month basis from *395 Coast to Coast, beginning September 1, 1986, for $ 388 per month. Petitioners submitted receipts signed by Mr. Toney showing that rent had been paid. Mr. Matlock was now in business full time and thought that he needed an office. We find that petitioners are entitled to a deduction of $ 1,552. Repairs and supplies. Petitioners claimed $ 464 for repairs. As substantiation, petitioner submitted receipts from various hardware stores totaling $ 671.14. Petitioners also claimed $ 1,056 for supplies, and produced hardware store receipts of $ 700.24. These expenditures were for materials and tools used to assemble the Whole Home Comfort System, a product sold by Coast to Coast. We have found that petitioner was in the business of selling environmental control systems. He was not in the business of assembling such systems; that was the business of Coast to Coast, a separate entity. The expenses were manufacturing expenses, not selling expenses. Therefore, these expenses were not incurred in petitioner's activity and not deductible by him. Leamy v. Commissioner, supra at 809; Westerman v. Commissioner, 55 T.C. 478 (1970). In addition, *396 the expenditures are not deductible because, in the absence of a binding agreement, a taxpayer may not deduct expenses voluntarily paid for the benefit of another. Deputy v. du Pont, 308 U.S. 488, 493 (1940); Westerman v. Commissioner, supra.Finally, as we have noted above, by this time petitioner owned shares of stock in Coast to Coast, and petitioner sought, through his assembling activities, to increase the value of that stock. Therefore, his expenses were, at best, nondeductible contributions to the capital of Coast to Coast. Leamy v. Commissioner, supra at 808. Respondent's determination is sustained. Utilities and telephone. Petitioners claimed $ 496 for utilities. Petitioners produced checks to local and long distance telephone companies totaling $ 594.34, and to utilities totaling $ 1,716.23. Petitioner testified that he deducted 70 percent of the phone bills, plus some unspecified percentage of the utilities allocable to his home office. Petitioner was unable to substantiate the existence or business necessity of the home office, especially for the time after he started subletting office space *397 in September 1986. Petitioner also was unable to justify his allocation of the business usage of the family telephone. We nonetheless believe that there was some business usage of the telephone, and allow a deduction of $ 220. Cohan v. Commissioner, supra.
Computer expenses. Petitioners deducted $ 697 for computer expenses. Petitioner produced a $ 697 invoice dated October 29, 1986, for software and programming services. The invoice is marked paid in full. By this time, Mr. Matlock was pursuing the new goal of creating a marketable computer program, whose function he did not describe. For reasons not clear from the record, he was apparently using Solar Innovations' corporate shell to launch this new venture. Indeed, the invoice states that it was issued to Solar Innovations, not Mr. Matlock. We sustain respondent's determination for several reasons. First, this expenditure is part of the cost of starting a new venture in computer software, and therefore is a nondeductible (and at this point, nonamortizable) startup expense. Sec. 195. Second, the fact that the invoice is addressed to Solar Innovations undercuts the credibility of the invoice *398 as support for petitioners' deduction, because Solar Innovations, rather than petitioner, should have paid the bill. Third, the fact that the vendee is Solar Innovations indicates that any payment by petitioner was on behalf of Solar Innovations, and therefore was not made in carrying on his own activity of selling solar units. Westerman v. Commissioner, supra.Fourth, petitioner's position as a shareholder in a related company indicates that his payment, if he made a payment, was a contribution to Solar Innovations' capital, and therefore was not deductible. Leamy v. Commissioner, supra.
Credit card charges. Petitioners claimed a $ 516 deduction for credit card charges. Petitioners offered no substantiation or adequate explanation of the charges. We sustain respondent's determination. Gifts and promotion. Petitioners deducted $ 550 for gifts and promotion. Petitioner submitted checks totaling $ 252.63. Petitioner offered no receipts and no testimony indicating what was purchased with the checks. For the reasons stated in our discussion of the 1985 business gifts, supra p. 35, we sustain respondent's determination. *399 Business meals. Petitioners claimed $ 894 for business meals. Petitioners submitted a calendar, similar to those for 1984 and 1985, prepared contemporaneously with the events described therein. The calendar notes that petitioners gave 11 seminars. The calendar shows that for eight of the seminars they invited a total of 126 people and spent a total of $ 828.89 for food ($ 6.58 per person). The calendar does not provide such information about the other three seminars. Petitioner's log indicated the number of people who actually attended one seminar, but not the others. The names of the attendees did not appear on the list, and no evidence that the amounts were paid, such as canceled checks or receipts, was submitted. For the reasons stated in our discussion of the 1985 entertainment and business meal deductions, supra p. 29, we allow petitioner a deduction of $ 3 per person expected, or $ 378. Miscellaneous expense. Petitioners claimed $ 1,375 as miscellaneous business expenses. Petitioners introduced receipts from various solar suppliers totaling $ 1,578.16. The receipts were all issued to Solar Innovations or Coast to Coast. No evidence, other than notations *400 on the invoices, indicates that the invoices were paid. The materials were used to repair existing solar installations or to assemble parts of the Whole Home Comfort System. As we already have stated, Mr. Matlock was in the business of selling solar equipment, not repairing or manufacturing it. Petitioner apparently was not paid for the repairs, and since the solar systems were no longer being marketed actively in 1986, the repairs were not likely to result in additional sales. The expenses might have been deductible if petitioner had proved a connection between the assembly and repair activities and his sales activity (e.g., that repairs created goodwill that led to sales), but petitioner did not offer any proof on this point and therefore did not sustain his burden of proof. Rule 142(a). We therefore find that the expenditures were not incurred in his profit-seeking activity. At best, they were nondeductible capital contributions by petitioner to Solar Innovations and Coast to Coast. Automobile expense. Petitioners claimed $ 2,561 for automobile operating expenses, maintenance, repairs, and insurance. Petitioner produced canceled checks in payment of oil company credit *401 card charges for $ 1,109.46, a check payable to a tire shop for $ 172.54, checks for repairs totaling $ 861.32, and a check to an insurance company for $ 139.91. These checks total $ 2,283.23. Although petitioner claimed that he used the two family cars for business an aggregate of 70 percent of the time, he testified that he drove one car 20 percent of the time and the other 50 percent of the time for business. We would normally expect these percentages to average out to 35 percent, assuming the cars were driven an equal number of miles. Petitioner was unable to corroborate his allocation and it is unlikely that he drove both cars 70 percent for business. For the reasons stated supra p. 26, in our discussion of the 1985 automobile expenses, we sustain respondent's determination. Travel expense. Petitioners claimed a deduction of $ 2,439 for travel expense. Petitioner submitted receipts totaling $ 417.30 for parking and banquet hall rentals from a hotel. The receipts listed Coast to Coast as the customer. The receipts only show that Coast to Coast incurred the charges, not that Mr. Matlock paid them and not that they were incurred in Mr. Matlock's activity. Petitioner *402 also submitted the checks written to telephone companies noted supra p. 39, for which we already have allowed a deduction. We sustain respondent's determination. Miscellaneous sales expense. Petitioners claimed $ 1,031 for miscellaneous sales expense. Petitioner submitted only the checks allegedly written to pay for business gifts, for which we already have sustained respondent's determination. We sustain respondent's determination. III. Residential Energy Credit
Petitioners did not claim a residential energy credit under section 23 for the solar unit installed at their Lynwood home for $ 17,700 during 1985. Petitioners claimed such a credit for 1984 for the Carson home and respondent does not contest petitioners' entitlement to that credit. Section 23(a) allowed (until 1986) a residential energy credit for 40 percent of qualified renewable energy source expenditures on renewable energy source property, as defined in section 23(b)(2) and (5), up to a maximum credit of $ 4,000. The renewable energy source credit is allowable only for expenditures related to the taxpayer's principal residence. Sec. 23(c)(2)(A)(ii). The amount of the credit is reduced by any *403 credit taken in a prior tax year for the same residence. Sec. 23(b)(3). There is no reduction in the credit, however, when the taxpayer changes principal residences and makes qualified renewable energy source expenditures on the new residence. Sec. 1.23-1(d)(2)(ii), Income Tax Regs.
Thus, if petitioners changed their principal residence to the Lynwood home in 1985, and if the Rope-a-Ray was renewable energy source property, they are entitled to a section 23 credit for 1985. On this record, we conclude that these conditions were satisfied. We consider all relevant facts and circumstances to determine whether a particular dwelling is a taxpayer's principal residence. Secs. 1.1034-1(c)(3), 1.23-3(e), Income Tax Regs. Petitioners' 1984 tax return, filed during 1985, shows their address as the Lynwood home. Subsequent returns used the same address. Petitioners' 1985 and 1986 returns show the Carson house as rental property. On both those returns, in response to the question on Schedules E, "For each property listed, did you or a member of your family use for personal purposes any of the properties for more than the greater of 14 days or 10% of the total days rented at fair rental *404 value during the tax year?" petitioners responded "No" regarding the Carson house. This evidence leads us to believe that the Lynwood home was petitioners' principal residence when the Rope-a-Ray was installed there. In addition, we are convinced that the Rope-a-Ray was an "active solar system", and therefore a "solar energy system" within the meaning of section 1.23-1(f)(2), Income Tax Regs. Petitioners are entitled to a residential energy credit of $ 4,000 under section 23 for 1985. IV. Additions to Tax
A. Negligence Section 6653(a)(1) (for 1984 and 1985) and section 6653(a)(1)(A) (for 1986) impose an addition to tax equal to 5 percent of an underpayment of tax if any portion of the underpayment was due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) (for 1984 and 1985) and section 6653(a)(1)(B) (for 1986) impose an addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). *405 Petitioners have the burden of proof on this issue. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioners failed to maintain adequate records of their solar unit sales activities and claimed deductions for personal expenses as business expenses on their returns. They unreasonably relied on Toney's tax advice, even though Toney had a clear conflict of interest, and they did not seek objective, professional advice elsewhere. See Rybak v. Commissioner, 91 T.C. 524, 565 (1988); Omerza v. Commissioner, T.C. Memo. 1992-206. They did not act reasonably or prudently. Accordingly, we sustain respondent's determination of negligence for all 3 taxable years. Furthermore, for purposes of sections 6653(a)(2) and 6653(a)(1)(B), we find that all the underpayments for all 3 years were attributable to negligence. Respondent also determined that petitioners were liable for increased interest on their underpayments. Interest on a negligent underpayment is increased if the underpayment is greater than $ 1,000 and is caused by tax-motivated transactions. Secs. 6653(a)(2) (for 1984 and 1985), 6653(a)(1)(B) (for *406 1986), 6601(a), 6621(c)(2). We have found that petitioner's actions were motivated by profit, and that his activity was not a sham. Significant portions of petitioners' understatements were caused by lack of substantiation, not tax-motivated transactions. The balance was caused by improperly claiming credits and depreciation deductions relating to petitioners' solar panels. "Since [these] grounds are neither enumerated in section 6621(c) nor discussed in the regulations promulgated thereunder, petitioners are not liable for additional interest under section 6621(c)." Kantor v. Commissioner, T.C. Memo. 1990-380. B. Substantial Understatement Section 6661 provides for an addition to tax when the tax shown on a return is substantially less than the taxpayer's true tax liability. An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax due. Sec. 6661(b)(1)(A). The addition to tax is 25 percent of the amount of the understatement of tax. Sec. 6661(a). When computing the addition to tax, the understatement is reduced by the amount of the understatement attributable to deductions or credits for which the taxpayer had *407 substantial authority. Sec. 6661(b)(2)(B)(i). For tax shelter items, the substantial authority reduction does not apply unless the taxpayer also shows that he reasonably believed that his tax treatment of those items was more likely than not the proper treatment. Sec. 6661(b)(2)(C)(i)(II). Whether a taxpayer had substantial authority is judged as of the time the return is filed or on the last day of the taxable year to which the return relates. Sec. 1.6661-3(b)(4)(iii), Income Tax Regs. We have stated that: substantial authority here refers to legal precedents which would support the taxpayer's application of the law to a given fact or set of facts. The weight of the authorities for the tax treatment of an item is determined by the same analysis that a court would be expected to follow in evaluating the treatment of the item. Thus, an authority is of little relevance if it is materially distinguishable on its facts from the facts of the case it issue. Sec. 1.6661-3(b)(3), Income Tax Regs. [Antonides v. Commissioner, 91 T.C. 686, 702-703 (1988).] Petitioners bear the burden of proof on this issue. Rule 142(a); Enoch v. Commissioner, 57 T.C. 781 (1972). *408 Respondent contends that all of petitioner's deductions were incurred in a tax shelter arrangement, and petitioners had no substantial authority for their positions and could not have reasonably believed that their tax treatment of the Solar Innovations items was correct. While we do not believe that petitioner's activities amounted to a tax shelter, we agree with respondent that petitioners did not have substantial authority for the disallowed portions of their deductions and credits. Petitioners claimed business expense deductions for essentially personal or capital expenditures, and claimed business-oriented credits for property that they devoted primarily to personal use. Respondent disallowed other items because they were unsubstantiated, and at trial petitioners were unable to establish under sections 6001 and 274(d) that they ever had a factual basis for these items. Even assuming that there were legal authorities that would have supported petitioners' claims (e.g., payments for supplies and bank charges are ordinary and necessary business expenses under section 162), those authorities are "materially distinguishable". See Antonides v. Commissioner, supra. *409 Petitioners have not carried their burden of proof. We sustain respondent's determination, to the extent that the Rule 155 computation shows that petitioners' understatements were substantial. Decision will be entered under Rule 155. Footnotes
1. 50 percent of interest due on $ 7,192. ↩
2. 50 percent of interest due on $ 7,842.↩
3. 50 percent of interest due on $ 6,328.↩
1. All section references are to the Internal Revenue Code as in effect for the taxable years in issue. All Rule references are to the Tax Court Rules Practice and Procedure.↩
2. The "quiet business meal" exception of sec. 274(e)(1), as in effect in the years in question, applies in this case. That section provides that sec. 274(a)--which requires that the taxpayer prove a close relationship between an entertainment expense and his trade or business--does not apply to: Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion. However, sec. 274(e)(1) does not relieve petitioner of the duty of substantiating his expenses with records and corroborating evidence under sec. 274(d). Hefti v. Commissioner, T.C. Memo. 1988-22; McBride v. Commissioner, T.C. Memo. 1987-94; sec. 1.274-2(f), Income Tax Regs.↩ Sec. 274(e)(1) has been repealed, effective with tax years beginning after the last day of 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 142(a)(2)(A), 100 Stat. 2085, 2118.
3. This result is not changed by sec. 1.274-2(f), Income Tax Regs. The last sentence of sec. 1.274-2(f)(1), Income Tax Regs., simultaneously excepts certain kinds of entertainment from the requirements of sec. 274(a) (relating to entertainment expenditures) and asserts that the substantiation requirements of sec. 274(d) shall apply to those exceptions. Among the exceptions are business meals and business programs, such as luncheons sponsored by professional organizations. Sec. 1.274-2(f)(2)(i), Income Tax Regs. Thus, the regulations appear to require firm substantiation of all business meal expenditures, regardless of whether they are "entertainment". However, given that sec. 1.274-2(f) applies to sec. 274(a), which deals with entertainment activities and facilities, we believe that the Secretary meant that if a business meal constitutes entertainment, as most business meals surely do, then the expense for the meal must be substantiated in compliance with sec. 274(d). If the expenditure is not for entertainment, then sec. 274(a) and sec. 1.274-2 do not apply. That is, sec. 1.274-2(f)↩ does not act to expand the list of expenses in sec. 274(d) for which firm substantiation is required.
4. For taxable years beginning after 1988, no deduction is allowable for the cost of basic telephone service on the first phone line installed in a residence. Sec. 262(b).↩